[Crim. No. 14950. Second Dist., Div. One. Mar. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MARVIN PHILLIPS, Defendant and Appellant.

Charles L. Abrahams and Frank O. Walther for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark W. Jordan, Deputy Attorney General, for Plaintiff and Respondent.

THOMPSON, J.—This is an appeal from a conviction of second degree murder on retrial after reversal by the Supreme Court without directions of an earlier conviction. (*People* v. *Phillips,* 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353].)

## FACTS

The evidence at trial was that 11-year-old Linda Epping was suffering from a cancer of the eye. Her parents had been advised that a radical operation involving removal of the eye and surrounding tissue, including the lid, was necessary to her treatment. After considerable hesitation, they had agreed to the operation to be performed at the UCLA Medical Center. On the eve of the operation, Linda's parents were referred to appellant, a chiropractor who promised a cure of the cancer without surgery. He charged a $500 fee and more than $200 for pills and medicine. Linda's parents were thus induced to forgo the operation. Expert testimony was that appellant's treatment was worthless and that the lack of (or delay in) an operation hastened Linda's death by a minimum of two months.

The defense theory, as developed by cross-examination and witnesses, was that appellant's treatment of Linda was in good faith although possibly mistaken, and that in any event her death was proximately caused not by conduct of appellant but either by the inevitable progress of the cancer or by the failure of Linda's parents to reschedule the operation after her treatment by appellant was discontinued.

## GROUNDS OF APPEAL

Appellant attacks the judgment now before us on the grounds that: (1) his retrial after reversal of his prior conviction violates the constitutional guarantee against double jeopardy; (2) he was denied the right to counsel of his own choosing; (3) he was denied his right to be confronted by witnesses against him; (4) he was denied a trial before a representative jury; (5) the trial court erroneously refused his proffered instruction that a chiropractor can treat cancer, and (6) he was inadequately represented by counsel. We find no error in the proceedings in the trial court.

## DOUBLE JEOPARDY

Appellant was indicted for murder and, after a jury trial, was convicted of murder in the second degree. The judgment of conviction was reversed without direction by the Supreme Court of California. After the remittitur issued, the case was

retried resulting in the conviction now before us. ▮ Appellant contends that the reversal of his first conviction bars a subsequent trial on the theory that he has been once in jeopardy. He argues that freedom from double jeopardy is a federal constitutional right operative in state prosecutions by reason of the Fourteenth Amendment.

The facts of the instant case relieve us of the need to enter the current debate over the extent to which the Fourteenth Amendment incorporates the Bill of Rights as a limitation upon state conduct. Whether we apply the California or federal test, the doctrine of double jeopardy is inapplicable in the case at bar.

▮ Penal Code section 1262 states: "If a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct. . . ." By California law, an unqualified reversal places the parties in the same position as if the cause had never been tried. (*People* v. *Murphy,* 59 Cal.2d 818, 833 [31 Cal.Rptr. 306, 382 P.2d 346].) The defendant who is successful in obtaining such a reversal does not gain immunity from further prosecution but subjects himself to a retrial that may reach the same result. (*People* v. *Henderson,* 60 Cal.2d 482, 495 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Demes,* 220 Cal.App.2d 423, 434 [33 Cal.Rptr. 896].)

▮ The same conclusion is reached by application of the federal standard with respect to application of the doctrine of double jeopardy. The principle is stated succinctly in *United States* v. *Ewell,* 383 U.S. 116, 121 [15 L.Ed.2d 627, 631, 86 S.Ct. 773] as: "It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events." (See also *United States* v. *Tateo,* 377 U.S. 463, 465 [12 L.Ed.2d 448, 450, 84 S.Ct. 1587]; *Green* v. *United States,* 355 U.S. 184, 189 [2 L.Ed.2d 199, 205, 78 S.Ct. 221, 61 A.L.R.2d 1119].)

▮ In the matter before us, appellant was convicted at an earlier trial and appealed successfully. The Supreme Court reversed his conviction without direction. Under both the California and federal rules, he could be tried again.

### DENIAL OF RIGHT TO COUNSEL

The murder of which appellant was convicted occurred December 29, 1961. The remittitur reversing appellant's first conviction was filed June 24, 1966. On July 6, 1966, appellant requested that his counsel, who had successfully prosecuted

the appeal, be relieved. His request was granted and the matter continued to July 22, 1966, for resetting. On July 22, the case was set for trial September 1, 1966. On September 1, appellant moved for a further continuance because "counsel [is] not available and time [is] needed to secure counsel." The motion was granted and the matter was continued to September 22, 1966. On September 22, M. S. Keith was substituted as counsel for appellant and on his motion another continuance to December 21, 1966, was granted. On December 21, the then trial judge entered his minute order correcting the trial date to January 10, 1967, "with the understanding that the cause is to be transferred to another Court for trial." On December 21, also, Gary H. Bock was accepted as appellant's associate counsel with Mr. Keith. On January 6, 1967, all parties and counsel appearing, the matter was set for trial on April 18, 1967. On April 11, 1967, appellant's motion to relieve Mr. Keith as counsel was granted. On April 18, 1967, appellant's motion to continue the trial until May 9, 1967, "for the purpose of obtaining trial counsel" was granted. On May 9, on appellant's motion, Mr. Bock was relieved as his counsel. The public defender was appointed, his appointment was approved by appellant, and the case was continued to May 16, 1967, for trial setting. On May 16, trial was set for September 5, 1967. On September 5, appellant's motion to substitute new counsel solely for the purpose of a motion for continuance was denied. However, the trial was continued to October 23, 1967, because of a congested calendar. On October 23, the case was called by the master calendar judge. Appellant's motion for a further continuance was denied and the case was transferred to a trial department.

The deputy public defender announced to the trial judge that he was ready for trial. Appellant's present counsel, Mr. Charles L. Abrahams, then stated to the court that it was appellant's desire that the public defender be relieved. Mr. Abrahams also stated, however, that he was not ready for trial. After Mr. Abrahams answered the judge's query concerning the late notification of appellant's desire for the substitution with "Well, it's just the feeling of Dr. Phillips at this time he does want another counsel," the court denied the motion to substitute and a motion to continue. The case was then ordered to trial on October 25, 1967. On October 25, the case was continued to October 31 because of a congested calendar. On October 31, another motion was made to substitute Mr. Abrahams for the public defender. Appellant filed

with the court a letter stating that a fund was being established for his defense and that the organizers of the fund were confident that the court would continue the matter to permit Mr. Abrahms to prepare for trial. The trial judge denied the motion. After trailing two more days, to November 2, trial commenced with appellant represented by the public defender.

Appellant now argues that in the process he was denied the right of representation by Mr. Abrahams, the counsel of his choice. That argument fails. A defendant's right to change counsel is not absolute and may be denied where necessary to avoid undue continuances and for the prompt administration of justice. (*People* v. *Thomas,* 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Farley,* 267 Cal.App.2d 214 [72 Cal.Rptr. 855]; *In re Bunker,* 252 Cal.App.2d 297 [60 Cal.Rptr. 344].)

In the matter before us, appellant had been represented by three different sets of lawyers, retained by him and then relieved on his motion before the appointment of the public defender. Over a period in excess of one year, he had obtained four continuances of the trial to permit him to acquire new counsel as a result of the substitutions and to permit preparation by new counsel. At the time that Mr. Abrahams' substitution into the case was sought by appellant, still another continuance to prepare for trial would have been required if that substitution had been permitted. Under those circumstances, we see no conceivable abuse of discretion by Judge Alarcon in denying the substitution of counsel and in forcing the case to trial.

There is an alternative basis upon which the order denying substitution must be sustained. The pattern of appellant's conduct in the pretrial stages of the case at bar involved repeated requests to discharge his counsel immediately preceding a trial date, and thereby to obtain a continuance of the moment of truth. The trial judge here could well have concluded that had he granted still another motion to substitute and continue, Mr. Abrahams would also have been discharged when the continued trial date arrived.

### CONFRONTATION OF WITNESSES

The testimony of two witnesses at appellant's first trial was read into the record at the proceeding now on appeal. The testimony of Diana Johnson to the effect that two and one-half years earlier appellant had undertaken to

"cure" her of skin cancer was read after it had been established that she was out of the jurisdiction and unavailable to testify because of her advanced pregnancy. The foundation presented to the trial court[1] satisfied statutory and constitutional requirements. (Evid. Code, § 1291; *Barber* v. *Page*, 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].)

The testimony of Dr. Bock was read into the record by stipulation. Dr. Bock's testimony, while offered by the prosecution, was on balance much more favorable to the defense. It contradicted the testimony of Linda's parents that appellant had stated that he could save her eye. It also established that the parents had declined Dr. Bock's advice to reschedule the operation after appellant's treatment had terminated, and had elected to treat the cancer with a Mexican herb, Yerba Mansa. The testimony tended to support the defense theories of good faith and lack of proximate cause. It cannot now be said that the public defender's tactic in entering into the stipulation was in error.

## COMPOSITION OF TRIAL JURY

Appellant asserts error in the composition of the trial jury. He contends that persons who had been treated by or who were acquainted with chiropractors were systematically excluded from membership by peremptory challenges exercised by the prosecution. We do not reach the legal issue of whether a defendant may be denied his right to a fair and impartial jury by the peremptory challenge process, because here appellant's contention is not supported by the facts. Appellant lists nine prospective jurors allegedly excused peremptorily because of past association with doctors of chiropractic. Two of those persons in fact served as members of the trial jury. One of them was the subject of a peremptory challenge by the defense. One additional juror also had a past association with a chiropractor. Three out of the twelve jurors before whom the case was tried thus were of the class which appellant now argues was systematically excluded. There is no basis for that argument.

## REFUSED JURY INSTRUCTION

Appellant proposed a jury instruction as follows: "You are instructed that a licensed doctor of chiropractic

---

[1] An investigator for the district attorney testified that arrangements had been made to bring the witness from Las Vegas, Nevada, to Los Angeles so that she might testify. By the time the continued trial date arrived, however, her physician advised against travel.

may lawfully treat a patient for cancer so long as he treats the patient within the scope of his chiropractic license.'' The instruction was refused by the trial court. There was no error in the refusal. The theory of the case in the trial court was not that Linda's death was caused by unlawful treatment by appellant—the theory of felony murder had been rejected by the Supreme Court in reversing the first conviction. (*People v. Phillips,* 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353].) The theory advanced by the prosecution and resisted by the defense was that appellant had maliciously caused Linda to terminate a surgical treatment that would have prolonged her life. Appellant's right to treat a patient for cancer was immaterial to that proposition. The relevant question was whether appellant acted in good faith or maliciously. Appellant's position in that regard was protected by Instruction No. 6 which stated: ''An act committed or an omission made in ignorance or mistake of fact which disproves any criminal intent, is not a crime. Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which if true would make such an act or omission lawful.''

### ADEQUACY OF REPRESENTATION

 Appellant contends that he was so inadequately represented by counsel that he was denied a fair trial. His brief recites a series of claimed deficiencies in representation. Some of them pertain to arguments which we have rejected in the prior portions of this opinion. Others are either not supported by the law or by the record. Appellant claims, for example, that defense counsel at trial should have insisted upon the disqualification of the prosecutor because the latter felt strongly about his case. The argument has no basis in the law. He argues, also, that the public defender failed to advise appellant of his Fifth Amendment rights (appellant did not take the stand) and otherwise ''betrayed'' his client. This argument is totally unsupported by the record. What does emerge from the eight volumes of transcript and supplemental transcript is a vigorous, well-structured, and intelligently developed defense.[2] Inadequacy of repre-

---

[2]The trial judge characterized the conduct of appellant's defense as follows: ''Before I proceed with making the order that I feel I must make in this case, I want to point out for the record that I have been involved with the criminal law for over 15 years in various kinds of jobs, as a former prosecutor, as a clemency secretary, as a chairman of the

sentation is not to be found from the fact of conviction alone.[3] We do not find it here.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1969. Mosk, J., did not participate therein.

parole board and as a Superior Court judge. And I don't believe I can cite any case where I have seen such an outstandingly fine job of the defense of a very difficult case than I have seen performed by Mr. Gessler in this case. And it is certainly a tribute to the Office of the Public Defender of Los Angeles County that they have dedicated young men, such as Mr. Gessler, working for reluctant clients at extremely low pay who perform, despite these obstacles, in the outstanding manner that I have observed in this particular case. I don't believe there is any lawyer in the United States that would have presented as effective an argument, nor would he have planned his trial strategy as it was beautifully planned in this case. I only cite my own experience, so as to develop for the record that I know a good piece of trial work when I see it."

[3]Particularly is this true in the instant case. Three justices of the Supreme Court in referring to appellant's first trial stated: "Defendant was indeed fortunate that he was not tried and convicted of first degree murder for Linda's death." (*People* v. *Phillips*, 64 Cal.2d 574, 590 [51 Cal.Rptr. 225, 414 P.2d 353].)