[Crim. No. 43199. Second Dist., Div. Seven. Jan. 11, 1984.]

In re SHANEA J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SHANEA J., Defendant and Appellant.

832

834

COUNSEL

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward T. Fogel and Pamela P. Cvitan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

## JOHNSON, J.—

### INTRODUCTION

Appellant, (a minor), appeals from an order of the juvenile court sustaining an allegation of robbery in violation of Penal Code section 211. Two issues are presented by this appeal. First, whether a judgment sustaining a petition in juvenile court must be reversed for lack of jurisdiction on the ground that the minor was previously determined to be not amenable to treatment under the juvenile court system. Second, if the juvenile court conviction must be reversed, whether the prohibition against double jeopardy prevents the minor's trial as an adult. The second issue appears to be a matter of first impression in California.

We hold the juvenile court was indeed without jurisdiction over the minor and hence its judgment must be reversed. We also hold that since the proscription against double jeopardy does not precludè a new trial when a defendant files an appeal based on trial error, the minor may face trial in superior court.

### I. FACTS AND PROCEEDINGS BELOW

Resolution of this appeal requires an examination of three separate petitions filed against appellant under Welfare and Institutions Code (W & IC) section 602.

Petition number one, filed October 27, 1981, alleged that appellant committed burglary in violation of Penal Code section 459, three counts of forcible rape in concert in violation of Penal Code sections 261, subd. (2) and 264.1, and one count of forcible oral copulation in concert in violation of Penal Code section 288a, subd. (c). A fitness hearing was held, and on November 13, 1981, appellant was found unfit to be tried as a juvenile[1] under W & IC section 707. Thereafter, an adult case was filed against him which resulted in his commitment on July 12, 1983, to the California Youth

[1]Appellant was born on September 19, 1965.

Authority (CYA) for a term of six years[2] against which he was credited with 391 days, for the sex offenses. (L.A. case No. A380258.)

Petition number two was filed in the instant case on June 16, 1982, alleging robbery of Charlie Williams in violation of Penal Code section 211.

Petition number three was filed on August 10, 1982. It alleged a subsequent robbery of Williams, with a firearm use, in violation of Penal Code section 12022.5, as well as forcibly dissuading the victim from testifying in violation of Penal Code section 136.1, subd. (c)(1). Another fitness hearing was held, and on August 26, 1982, appellant was again found unfit to be tried as a juvenile. (W & IC, § 707.) We do not know the disposition of this case.[3]

In the instant case involving the second petition, the People did not move to find appellant unfit to be tried as a juvenile. An adjudication hearing was held and on August 13, 1982, the petition was sustained. After a disposition hearing, held on August 30, 1982, appellant was committed to CYA for a term of five years.

Appellant filed a timely notice of appeal urging three grounds for reversal: (1) ineffective assistance of counsel; (2) improper exclusion of the victim's reputation for dishonesty; and (3) insufficient evidence of robbery.

On September 29, 1983, this court requested supplemental briefing on the issue of whether the cases of *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463] and *People v. Superior Court (Woodfin)* (1982) 129 Cal.App.3d 970 [182 Cal.Rptr. 787], applied to the instant case. Those cases held that once a minor is found unfit to be tried as a juvenile for one offense, the juvenile court system is thereafter without jurisdiction to proceed on any other charges pending against the minor.

II. ■ SINCE THIS MINOR WAS FOUND UNFIT FOR HANDLING BY THE JUVENILE COURT SYSTEM BOTH BEFORE AND AFTER THE PROCEEDINGS ON THIS CHARGE, JUVENILE COURT HAD NO JURISDICTION TO PROCEED ON SUBSEQUENT CHARGES AGAINST HIM.

W & IC section 707 authorizes the prosecutor, "prior to the attachment of jeopardy," to move for a fitness hearing. At the conclusion of this hear-

---

[2]W & IC section 1731.5 allows a juvenile tried as an adult to be sentenced to CYA. (See *People v. Mackey* (1975) 46 Cal.App.3d 755 [120 Cal.Rptr. 157], cert. den. *Mackey v. California* (1975) 423 U.S. 951 [46 L.Ed.2d 287, 96 S.Ct. 372].)

[3]Apparently appellant is awaiting trial on these charges.

ing "the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court. . . ."

In *In re Dennis J., supra,* 72 Cal.App.3d 755, division two of this court stated at page 762: "When a juvenile court determines that a minor is not a fit subject for handling under the juvenile court law, it should not attempt to exercise or retain jurisdiction over the juvenile on matters then pending in the juvenile court, especially where the pending matters were part of the basis upon which the determination of unfitness was made." Thus, once it is determined that a minor should be tried as an adult, the juvenile court should transfer any pending petitions against him to the jurisdiction of the superior court. This is necessary to preserve the rehabilitative goals of both justice systems as well as to avoid "potential conflicts that could arise . . . where two separate entities exercise concurrent jurisdiction over the minor." (*Id.,* at p. 761.)

In *People* v. *Superior Court (Woodfin), supra,* 129 Cal.App.3d 970, the minor was found fit as to two petitions in hearings held on February 18 and April 17, 1981, but unfit with respect to a third petition in a hearing held on May 22, 1981. The court stated at page 975: "[P]etitioner is correct in contending the case of *In re Dennis J., supra,* 72 Cal.App.3d 755 . . . requires that once a juvenile court determines a minor is not amenable to treatment under the juvenile court system as to some crimes, he cannot be held under the jurisdiction of the juvenile court for treatment as to other crimes." (See also Hicks, *Here's Looking At You, Kid: Prosecutors In The Juvenile Court Process* (1978) 5 Pepperdine L.Rev. 741, 758, fn. 48.)[4] In *Woodfin,* all of the minor's offenses were part of "a crime 'spree,' when [he] and two others terrorized a residential area of Sacramento . . . between January 1 and January 10, 1981, by forcing themselves into houses after ringing the doorbells, and committing robberies, assaults and sexual crimes on the residents." (*People* v. *Superior Court (Woodfin), supra,* 129 Cal.App.3d 970, 975.)

We do not believe that the fact that the earlier sex offenses alleged in petition number one are unrelated to the present petition distinguishes *Woodfin* or *Dennis J.* from the situation here, especially since the victim of the robbery alleged in this case was also the victim of the robbery and intimidation alleged in the third petition as to which appellant was again found unfit.

---

[4]This article also explains that in California the juvenile court is responsible for determining in which forum the juvenile should be tried, whereas in some jurisdictions that responsibility is borne by the prosecutor. (5 Pepperdine L.Rev. 741, 758, fn. 48.)

In *Dennis J.,* the determination of unfitness was made on the last of three petitions filed against the minor. The court in that case held the juvenile court lacked jurisdiction over two pending petitions which had been filed earlier. Similarly, in *Woodfin,* the determination of unfitness was made on the last of three petitions filed. In the instant case, where the first determination of unfitness was made seven months before this petition was even filed, the lack of jurisdiction over appellant should have been even more obvious to the juvenile court.

We do not foreclose completely the possibility a juvenile could be found unfit on one occasion and then a considerable period later be found suitable for juvenile proceedings. However, that conclusion would have to be based on an express finding the juvenile had evolved psychologically into a person now amenable to treatment by the facilities available to juvenile court. Here it is obvious the necessary transformation did not occur since this juvenile was found unfit once again less than two weeks after his hearing on the instant charge. Thus the proceeding on this charge is bracketed by two findings of unfitness to be dealt with under juvenile court law. A fortiori, the juvenile court lacked jurisdiction over this individual on this charge.

Although here the first determination of unfitness involved crimes unrelated to the instant case, the holdings in *Dennis J.* and *Woodfin* are not based on the relationship between the crimes charged. Rather, they are based on the reality that if a minor has been found incapable of being rehabilitated by the juvenile court system as to one petition, the minor is a fortiori unfit for juvenile court rehabilitation as to subsequent petitions.

The rationale for these decisions was stated as follows: "In exercising its jurisdiction the juvenile court cannot treat and rehabilitate a part of the minor while leaving another part to the rehabilitation processes of the regular criminal justice system. Either the juvenile court or the adult criminal court must deal with the whole individual." (*In re Dennis J., supra,* 72 Cal.App.3d 755, 760; quoted in *People* v. *Superior Court (Woodfin), supra,* 129 Cal.App.3d 970, 975.) ■ At a fitness hearing under W & IC section 707, the primary focus is the nature of the minor's amenability to rehabilitation by the juvenile justice system and not the nature of the pending charges. *Dennis J.* and *Woodfin* recognize the objectives of rehabilitation are frustrated when multiple jurisdictions exercise control over an offender. This rationale is equally applicable to the instant case and thus it was error for the juvenile court to retain jurisdiction over appellant.

■ Nor is the conclusion altered by the classifications and presumptions established by W & IC section 707. Subdivision (c) of W & IC section 707 provides that a minor who is 16 years of age or older and has committed

one of a specified list of crimes is presumed *un*fit for handling by the juvenile courts while no such presumption influences fitness determinations under section 707, subdivision (a), where other crimes are charged. The allegations of robbery, filed against appellant in petition number two, would constitute a subdivision (a) offense and hence, in the absence of the prior and subsequent findings of unfitness, appellant might have been found fit. Here, however, the two findings of unfitness bracketing petition two preclude juvenile court jurisdiction because fitness itself relates to the character of the juvenile offender and not the nature of the offense charged. Whether that offense is a subdivision (a) or subdivision (c) offense thus is not determinative in this case.

The Attorney General nevertheless argues that since in both the instant juvenile case and the adult case (L.A. case No. A380258) appellant was sentenced to CYA, appellant's rehabilitative process is being pursued by a single facility and the concerns expressed in the cases of *Woodfin* and *Dennis J.* do not exist here. We disagree.

W & IC section 1737 permits the recall of a minor's commitment to CYA and his resentencing "as if he had not previously been sentenced." ■ However, the statute does not apply to Youth Authority commitments from juvenile court. (*In re Tony S.* (1978) 87 Cal.App.3d 429, 432-433 [151 Cal.Rptr. 84].)[5] Similarly, W & IC section 1737.1 permits a minor to be resentenced to a state prison or county jail if the Youthful Offender Parole Board determines he is an improper person to be retained at CYA, *but only if the minor was sentenced by the adult court.* Finally, W & IC section 1731.5, which permits a juvenile tried as an adult to be sentenced to CYA, provides that in all other respects the juvenile "shall remain subject to the jurisdiction of the Director of Corrections and the Board of Prison Terms," rather than to the jurisdiction of the juvenile justice system. (See also *Juvenile Court Law* (1975) 7 Pacific L.J. 486, 488.)

■ Thus, although appellant is currently detained at CYA in both cases, his rehabilitative process is subject to two jurisdictions, not one. His sentence on the first case from superior court may be revoked and he may be resentenced to an adult facility. No such options are available for revocation of appellant's sentence in the instant case because he was sentenced by the juvenile court. This is precisely the conflict caused by two separate entities exercising jurisdiction, cautioned against in the cases of *Dennis J.*

---

[5]W & IC section 777 does authorize the prosecutor to demonstrate that a minor who is placed on probation by the juvenile court is in need of more restrictive placement than previously required by the court and the result is increasing the level of custody of a juvenile. (See also *In re Michael R.* (1977) 73 Cal.App.3d 327, 334 [140 Cal.Rptr. 716], quoting *In re Arthur N.* (1976) 16 Cal.3d 226 [127 Cal.Rptr. 641, 545 P.2d 1345].)

and *Woodfin*. "Either the juvenile court or the adult criminal court must deal with the whole individual." (*In re Dennis J., supra,* 72 Cal.App.3d 755, 760.) Accordingly, we hold the juvenile court improperly exercised jurisdiction in the instant case. The judgment must be reversed.

III. SINCE THE PROSCRIPTION AGAINST DOUBLE JEOPARDY DOES NOT PRECLUDE A NEW TRIAL WHEN A DEFENDANT FILES AN APPEAL BASED ON TRIAL ERROR, APPELLANT MAY FACE TRIAL IN SUPERIOR COURT.

Appellant, citing only *Rios* v. *Chavez* (9th Cir. 1980) 620 F.2d 702, argues that since the juvenile court lacked jurisdiction over appellant, the constitutional prohibition against double jeopardy precludes a new trial in superior court.[6]

The *Rios* case relied on a decision by the United States Supreme Court in which the court held the constitutional prohibition against double jeopardy[7] applies to juvenile court proceedings. (*Breed* v. *Jones* (1975) 421 U.S. 519, 526, 541 [44 L.Ed.2d 346, 362, 95 S.Ct. 1779], citing *Jones* v. *Breed* (9th Cir. 1974) 497 F.2d 1160, 1165.)[8] In *Breed,* the California juvenile court had conducted a delinquency hearing at which the court determined beyond a reasonable doubt that the minor had committed the robbery alleged in the petition. (W & IC, § 701.) In a later fitness hearing, the court determined the minor was not amenable to treatment by the juvenile justice system and thus certified the case for adult criminal prosecution. (W & IC, § 707.) The Supreme Court held the minor's trial as an adult violated the prohibition against double jeopardy, since the juvenile court judge adjudicated the minor's guilt. Such a determination of guilt when made before transferring the case to superior court for an adult trial, abrogates "[t]he purpose of the Double Jeopardy Clause [which] is to require that [a person] be subject to the experience [of trial] only once 'for the same offence.'" (*Breed* v. *Jones, supra,* 421 U.S. 519, 530 [44 L.Ed.2d 346, 355], citations omitted.)

In *Rios,* a juvenile court hearing adjudicating the minor's guilt was also held prior to the determination that the minor should be tried as an adult.

---

[6]The Attorney General does not address this issue.

[7]The Fifth Amendment to the federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The California Constitution, article I, section 15, provides that "[No person] shall be twice put in jeopardy for the same offense; . . ." And Penal Code section 687 restates the constitutional prohibition against double jeopardy in terms of prosecution and judgment: "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted."

[8]Before *Breed* was decided our high court had already held that the state and federal double jeopardy clauses applied to juveniles in the case of *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375-376 [93 Cal.Rptr. 752, 482 P.2d 664].

(*Rios* v. *Chavez, supra,* 620 F.2d 702, 703.) The Ninth Circuit held that *Breed* applied, and stated: "Indeed, [at the juvenile hearing] the prosecution put on an impressive case which was highly persuasive of Rios' guilt. The judge's ultimate determination that Rios' case should be dealt with by another branch of the state judiciary in no way diminishes the risk of adjudication which was present throughout the hearing. Accordingly, we are left with no choice but to conclude that Rios was placed in jeopardy at the initial hearing and that his subsequent prosecution for the same offense violated the guarantee against double jeopardy." (*Id.,* at p. 708.)

■ *Breed* and *Rios* clearly establish that a minor is placed in jeopardy as soon as a properly convened adjudicatory hearing is held in juvenile court. Thus, once the juvenile court begins to hear evidence of the underlying offense, a subsequent trial in superior court violates the constitutional prohibition against double jeopardy.

*Breed* and *Rios* are clearly distinguishable from the situation presented here, however. In both of those cases the first adjudication in juvenile court was within the court's jurisdiction. The determinations of unfitness were made after properly convened hearings had been held adjudicating the guilt of each of the minors. The bar of once in jeopardy was thus available to preclude a second adjudication in superior court. ■ Here, in contrast, appellant's original hearing in juvenile court was invalid due to a prior finding of unfitness. This prior finding meant that the juvenile court did not have jurisdiction to proceed against appellant.[9] An even more compelling distinction between *Breed* and *Rios* and this case, however, is the role of the prosecution in each situation.

■ "The underlying idea [of the prohibition against double jeopardy], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119].) Thus, one of the principal objectivies of the ban against double jeopardy is to safeguard the accused from the excessive harrasment which would result from repeated attempts to convict in successive criminal prosecutions. This objective bars the pros-

---

[9]This distinction is made for purposes of clarity only. In distinguishing *Breed* and *Rios* in this manner we do not imply that jeopardy never attached at the juvenile hearing in the instant case. As we explain in footnote 12, *post,* we expressly decline to decide this issue.

ecution from imposing successive trials on the accused and thereby increasing the odds of obtaining an unwarranted conviction. It supplies the principal rationale for the decisions prohibiting the prosecution's appeal from a judgment of acquittal. (*Ibid.*)

In both *Breed* and *Rios* the prosecution was in essence attempting to get two chances to convict the minors. In both of those cases, even if the minors were absolved at the first adjudication in juvenile court, the prosecution was given an absolute right to try the minors in superior court anyway. The structure of the interface between the juvenile and adult court systems thus gave the prosecutor the option to force a minor to stand trial twice for the same offense, regardless of the outcome of the first proceeding.

The prosecution's posture in this case contrasts sharply with the posture adopted in *Breed* and *Rios*. Here, the prosecution intended to try appellant only once, but made the mistake of doing so in a court without jurisdiction. Moreover, here, appellant appealed the judgment of the juvenile court and the prosecution, rather than attempting to try appellant again, has opposed reversal of the judgment they did obtain.

In any event, there is a further reason that *Breed* and *Rios* do not resolve the issue presented by the instant case. Here the minor appealed the juvenile court judgment on grounds of trial error and this court subsequently determined that the juvenile court did not have jurisdiction over the minor when it pronounced sentence.

Recently our high court stated, "It is a familiar principle that a defendant who has succeeded in having his conviction set aside impliedly waives any objection to being retried on the charge of which he was convicted." (*People* v. *Serrato* (1973) 9 Cal.3d 753, 759-760 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144], citing *Forman* v. *United States* (1960) 361 U.S. 416 [4 L.Ed.2d 412, 80 S.Ct. 481] (reh. den. 362 U.S. 937 [4 L.Ed.2d 751, 80 S.Ct. 749]), overruled on other grounds in *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485]; *People* v. *Tong* (1909) 155 Cal. 579 [102 P. 263].)[10] "The defendant's successful effort to set aside [the] verdict and judgment by means of . . . an appeal is a waiver of his constitutional right to object to being placed again in jeopardy. In effect, he consents to be tried anew." (*People* v. *Tong, supra,* 155 Cal. 580, 585 (conc. opn.); see also *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470

---

[10]Of course, the rule is otherwise when a conviction is reversed for insufficiency of the evidence. (*Burks* v. *United States* (1977) 437 U.S. 1, 16 [57 L.Ed.2d 1, 13, 98 S.Ct. 2141].)

P.2d 345] [consent to waive double jeopardy challenge when defendant joins in motion for mistrial].)[11]

■ There is also statutory authority for ordering retrial of a defendant after he is successful on appeal. Penal Code section 1262 authorizes retrial after a conviction is reversed. It provides that "[i]f a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct . . . ." And it is well settled that such a retrial does not violate the prohibition against double jeopardy. (*People* v. *Phillips* (1969) 270 Cal.App.2d 381, 385 [75 Cal.Rptr. 720], cert. den., *Phillips* v. *California* (1970) 396 U.S. 1021 [24 L.Ed.2d 514, 90 S.Ct. 593].) "By California law, an unqualified reversal places the parties in the same position as if the cause had never been tried. The defendant who is successful in obtaining such a reversal does not gain immunity from further prosecution but subjects himself to a retrial that may reach the same result." (*Ibid.*, citations omitted.)

In *Burks* v. *United States, supra,* 437 U.S. 1, at page 15 [57 L.Ed.2d 1, at page 12, 98 S.Ct. 2141], the United States Supreme Court decried the "present state of conceptual confusion existing in . . . double jeopardy analysis." The court then approved an existing exception to the double jeopardy prohibition for convictions reversed for trial error, stating, "Various rationales have been advanced to support the policy of allowing retrial to correct trial error, but in our view the most reasonable justification is . . . ,

" 'It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.'

"In short, reversal for trial error, . . . implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error,

---

[11]The case of *In re Bryan* (1976) 16 Cal.3d 782 [129 Cal.Rptr. 293, 548 P.2d 693], is factually similar to *Breed.* There, the minor was found fit to be tried as a juvenile and the petition against him alleging murder and assault was sustained. (*Id.,* at p. 784.) He was sentenced to CYA but that agency refused to accept his commitment. (*Id.,* at pp. 784-785.) Another fitness hearing was held and this time the minor was found *unfit* to be tried as a juvenile. (*Id.,* at p. 785.) Our high court reversed its earlier decision in the case (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575 [102 Cal.Rptr. 831, 498 P.2d 1079]) and held the minor's subsequent trial as an adult violated the prohibition against double jeopardy. (*In re Bryan, supra,* 16 Cal.3d 782, 787.) In *Bryan,* our high court was not called upon to decide whether an exception to the double jeopardy prohibition existed which would permit the adult court to conduct a new trial of the minor and that case is thus inapplicable to the issue which we focus upon here.

just as society maintains a valid concern for insuring that the guilty are punished." (*Ibid.*, citations omitted.)

Thus, an exception to the double jeopardy prohibition for a case that has been reversed on appeal has been approved by both the United States Supreme Court and our own state's highest court. The exception accommodates the interest in a fair judicial process which is shared by both the state and the accused, as well as the state's interest in ensuring that the accused stands trial to determine guilt or innocence. ██ We conclude that, ordering appellant's trial in superior court does not violate either the California or federal prohibitions against double jeopardy.[12]

IV. ██ A New Trial Is Appropriate if the Judgment Is Reversed on Grounds of Legal Necessity Even if Those Grounds Are Different From Those Advanced on Appeal.

The question remains, however, whether a new trial may be granted in the situation where, as here, we reverse the judgment below on grounds different from those advanced by appellant in his appeal. We answer that question in the affirmative.

---

[12]We have found only one other jurisdiction, Texas, which has recently considered this issue on facts similar to the instant case. (*Matter of D. M.* (Tex.Civ.App. 1980) 611 S.W.2d 880.) In the Texas case the minor was convicted of murder in superior court which assumed jurisdiction over him on the basis of his own claims that he was an adult. When it was later determined that he was only sixteen, the juvenile court assumed jurisdiction. The appellate court in that case held that no jeopardy attached at the first trial because the court had no jurisdiction over the minor. (*Id.*, at p. 883.) "[I]f the court has no jurisdiction, all proceedings are absolutely void and, therefore, no bar to subsequent proceedings in a court which has jurisdiction." (*Ibid.*, citations omitted; see also *Commonwealth* v. *Davis* (1916) 169 Ky. 681 [185 S.W. 73, 76]; *Talbott* v. *Commonwealth* (1915) 166 Ky. 659 [179 S.W. 621, 623]; cf., *McCarver* v. *State* (Fla.App. 1980) 379 So.2d 979.)

A number of California cases also hold that jeopardy never attaches at a trial held in a court without jurisdiction to try the offense. (E.g., *People* v. *Hamberg* (1980) 84 Cal. 468 [24 P. 298] [superior court had no jurisdiction over misdemeanor]; *People* v. *Zadro* (1937) 20 Cal.App.2d 320 [66 P.2d 1204] ["class B" justice court had no jurisdiction over misdemeanor alleged].) These cases thus subscribe to a rule that a new trial is not barred by the double jeopardy prohibition when the former prosecution was from a court without jurisdiction.

Accordingly, we recognize there is valid authority for us to hold that jeopardy never attached at the juvenile court proceedings in the instant case. We are troubled by the broad pronouncements in some of this cited authority, however. Since the prohibition against double jeopardy refers to the potential for harassment incident to the possibility of being twice put on trial rather than the possibility that an accused might be twice punished (*United States* v. *Ball* (1895) 163 U.S. 662, 669 [41 L.Ed. 300, 302, 16 S.Ct. 1192]; see also *Green* v. *United States, supra,* 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204]) we can conceive of situations where permitting retrial after a void judgment might violate the prescription against double jeopardy. However, we are satisfied that permitting a new trial in the instant case would not violate any of the policies underlying the prohibition against double jeopardy. In any event, since we hold appellant may be retried under the exception for defendants who file appeals based on trial error, we need not decide whether this alternate ground also could apply to permit the new trial.

We note that if a jurisdictional error appears in a case pending before this court we are obligated to correct the error. (*People* v. *Davis* (1981) 29 Cal.3d 814, 827, fn. 5 [176 Cal.Rptr. 521, 633 P.2d 186], citing *People* v. *Serrato, supra,* 9 Cal.3d 753, 763; *People* v. *Zubia* (1975) 49 Cal.App.3d 301, 303, fn. 1 [122 Cal.Rptr. 926].) That is precisely the situation which we were faced with in the instant case and hence we reverse the invalid judgment below.

Since an appellate court may reverse a conviction and order a new trial on any ground, regardless of the ground urged on appeal, ordering a new trial here does not violate the prohibition against double jeopardy. In *Forman* v. *United States, supra,* 361 U.S. 416 at page 426 [4 L.Ed.2d 412 at pages 419-420], the United States Supreme Court explained that when a defendant appeals "from his conviction, he subject[s] himself to the power of the appellate court to direct such 'appropriate' order as it [deems] 'just under the circumstances.'" Here, had we reversed the judgment below on one of the grounds urged by appellant in his appeal, it is without question that he would be subject to a second adjudication. (Pen. Code, § 1262.) This is because, as we have explained, when an appellant obtains reversal of a conviction for trial error his remedy is a new trial free from such error and not the prospect of escaping punishment altogether. (*Burks* v. *United States, supra,* 437 U.S. 1, 15 [57 L.Ed.2d 1, 12].)

The jurisdictional error in this case created a legal necessity compelling reversal of the judgment below. In *In re Raymond P.* (1978) 86 Cal.App.3d 797, 802-804 [150 Cal.Rptr. 537], the court held that since dismissal by a referee of a juvenile court petition was on the referee's own motion and was without legal necessity, the bar of once in jeopardy was available in a subsequent proceeding for the same offense. In the context of a trial that has ended in either a mistrial or discharge of the jury, the United States Supreme Court has also focussed the question of retrial on whether a legal necessity existed for declaring the mistrial or ordering the jury discharged. (E.g., *Illinois* v. *Summerville* (1973) 410 U.S. 458, 467-468 [35 L.Ed.2d 425, 432-433, 93 S.Ct. 1066]; *Arizona* v. *Washington* (1978) 434 U.S. 497, 505 [54 L.Ed.2d 717, 728, 98 S.Ct. 824]; see also Double Jeopardy after Declaration of Mistrial or Discharge of Jury in Federal Court (1961) 6 L.Ed.2d 1510-1519.) For example, the court has consistently allowed a retrial where a mistrial was declared because the jury could not agree, even when the mistrial was declared over the defendant's objection. (*Logan* v. *United States* (1892) 144 U.S. 263 [36 L.Ed.2d 429, 12 S.Ct. 617]; *Selvester* v. *United States* (1898) 170 U.S. 262 [42 L.Ed.2d 1029, 18 S.Ct. 580]; *Wade* v. *Hunter* (1949) 336 U.S. 684 [93 L.Ed. 974, 69 S.Ct. 834], reh. den. 337 U.S. 921 [93 L.Ed. 1730, 69 S.Ct. 1152] (dictum); *Green* v. *United States, supra,* 355 U.S. 184 (dictum).)

The reasoning of these decisions is equally applicable to the situation where a judgment is reversed on grounds different from those advanced in an appeal. In *Illinois* v. *Somerville, supra,* 410 U.S. 458, 468-469 [35 L.Ed.2d 425, 433-434], the court approved the rule permitting a retrial after the declaration of a mistrial on the basis of "manifest necessity." The court cautioned, however, that the rule would be otherwise if the case involved "a defective procedure that would lend itself to prosecutorial manipulation." (*Id.,* at p. 464 [35 L.Ed.2d at p. 431].) As we have explained, the defect in appellant's first hearing was jurisdictional. The resulting reversal is the result of legal necessity rather than the result of prosecutorial manipulation. Thus the instant case is closely analogous to the cases permitting retrial after a mistrial has been declared on grounds of necessity. We conclude that our reversal of the judgment here, on a different ground than that which was urged by appellant, does not preclude a new trial.

V. WHEN A COURT PRONOUNCES SENTENCE IN EXCESS OF ITS JURISDICTION, A MORE SEVERE SENTENCE MAY BE IMPOSED AT THE NEW TRIAL.

The instant case does not present the conventional situation where a retrial is ordered after a conviction has been reversed on appeal, however. Normally if the appellate court reverses a conviction, it remands the case back to the trial court for retrial. (Pen. Code, § 1262.) Here, the error which occurred at trial is that the court which tried and sentenced appellant was completely lacking in jurisdiction over him. Thus, rather than remanding this case to the court in which it was originally tried, we must order the case remanded to a new court that does have jurisdiction.

Our concern is that since the superior court will try appellant as an adult, the nature of his sentence if he is convicted could conceivably be more severe than the sentence meted out by the juvenile court below. (See W & IC, §§ 1737, 1737.1 and 1731.5, and discussion, *supra.*) The issue thus presented is whether the prohibition against double jeopardy precludes a new trial in which the defendant faces the risk of increased punishment if he is convicted.

Although the United States Supreme Court has held that neither the double-jeopardy clause nor the equal protection clause precludes imposition of a more severe sentence on retrial, *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 719 [23 L.Ed.2d 656, 666, 89 S.Ct. 2072], in California the rule is contrary. In *People* v. *Henderson* (1963) 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677], our high court held that a conviction on retrial which imposed the death penalty, was barred on double jeopardy grounds where the original conviction imposed a life term only. (*Id.,* at p. 497.) The court then stated the general rule that imposition of a more severe sentence

on retrial was prohibited by California's constitutional guarantee against double jeopardy. (*Ibid.*)

But in a case decided after *Henderson,* our high court stated, "The rule is otherwise, [however,] when a trial court pronounces an unauthorized sentence. Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*People* v. *Serrato, supra,* 9 Cal.3d 753, 764, fn. omitted.) In *Serrato,* the trial judge placed the defendants on probation after reducing their offense to an uncharged crime. The court, relying on *In re Sandel* (1966) 64 Cal.2d 412 [50 Cal.Rptr. 462, 412 P.2d 806] [trial court had no power to order concurrent sentences]; *People* v. *Orrante* (1962) 201 Cal.App.2d 553 [20 Cal.Rptr. 480] [trial court exceeded its jurisdiction by granting probation after murder conviction]; and *People* v. *Massengale* (1970) 10 Cal.App.3d 689 [89 Cal.Rptr. 237] [unauthorized sentence to county jail since statute required prison term], explained that these cases "illustrat[e] that a defendant who successfully attacks a judgment which is in excess of the court's jurisdiction is not necessarily entitled to claim the protection of that invalid judgment as an absolute limitation upon what the court may do thereafter." (*People* v. *Serrato, supra,* 9 Cal.3d 753, 765.)

In the instant case, since the juvenile court had no jurisdiction over appellant, its judgment must be vacated. If appellant is convicted at the new trial in superior court, he faces the prospect that the sentence imposed might be more severe than the invalid sentence. However, the *Serrato* case, and the cases which preceded it, provide authority that this is constitutionally permissible.

### DISPOSITION

The judgment is reversed. The case is remanded to the criminal departments of superior court for disposition consistent with the views expressed in this opinion. Naturally appellant is entitled to credit on any new sentence for time served under the invalid sentence from the juvenile court if he is tried and convicted. (Pen. Code, § 2900.1; *North Carolina* v. *Pearce, supra,* 395 U.S. 711.) We find it unnecessary to consider appellant's claims regarding defects in procedure at the juvenile court hearing in view of our holding that the court lacked jurisdiction to conduct the hearing.

Schauer, P. J., and Thompson, J., concurred.

On February 10, 1984, the opinion was modified to read as printed above.