[No. B007729. Second Dist., Div. Five. Mar. 8, 1985.]

In re JAMES G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JAMES G., Defendant and Appellant.

**COUNSEL**

Abby Edleson Pollitt, under appointment by the Court of Appeal, for Defendant and Appellant.

James K. Van de Kamp, Attorney General, Andrew D. Amerson and John Harrel, Deputy Attorneys General, for Plaintiff and Respondent.

**O**PINION

**EAGLESON, J.**—In this case we hold that a juvenile court retains exclusive jurisdiction over a minor who commits crimes at age 15, even though with respect to later crimes committed at age 16 the juvenile court finds the minor unfit to be dealt with under juvenile law.

## PROCEDURAL BACKGROUND

On February 24, 1983, appellant, James G., was charged in a petition, filed pursuant to Welfare and Institutions Code section 602, with three separate acts of rape (Pen. Code, § 261, subd. (2)), all in concert with others (Pen. Code, § 264.1), three separate acts of oral copulation (Pen. Code, § 288a, subd. (d)), and one act of kidnaping (Pen. Code, § 207). Appellant was 15 years of age at the time he allegedly committed the crimes charged. He denied the allegations and was released to his mother on home supervision.

On May 16, 1983, another petition was filed alleging that on May 12, 1983, appellant, now age 16, had committed an act of kidnaping (Pen. Code, § 207), with the use of a handgun (Pen. Code, § 12022.5), unlawfully possessed a concealable firearm (Pen. Code, §§ 12021.5, 12025, subd. (b)), and unlawfully carried a loaded firearm in a public place (Pen. Code, § 12031, subd. (a)). Appellant's home supervision was revoked and he was held in custody on this petition.

With respect to the latter petition only, on June 8, 1983, pursuant to a motion by the prosecution, the court determined appellant to be unfit to benefit from the jurisdiction of the juvenile court (Welf. & Inst. Code, § 707).[1] As a result of this ruling, appellant demurred to the court's jurisdiction to adjudicate the February 24, 1983, petition. The demurrer was overruled.

The juvenile court tried appellant on the allegations of the February 24, 1983,[2] petition. The court determined that appellant twice acted in concert with another person or persons in the commission of rape (Pen. Code, § 261, subd. (2) and § 264.1) and that appellant committed one act of kidnaping (Pen. Code, § 207) and sentenced him to the California Youth Authority. This appeal followed. We affirm.

---

[1]Unless otherwise noted, all further references are to the Welfare and Institutions Code.

[2]The May 16, 1983, petition was dismissed on June 29, 1983. At that time the juvenile court was informed that appellant was being prosecuted in the adult court for the same charges contained in the petition.

ADJUDICATION HEARING

At approximately 11 a.m. on February 19, 1983, Stephanie D. was returning to her home after a visit with some friends when she was confronted by several unfamiliar boys. One of the group members asked her: "Do you want me to kick your ass?" After a short exchange in which Stephanie refused to accompany the boys to a nearby vacant house, four of the boys grabbed her and forcibly took her there. At the house, five of the boys repeatedly raped her and forced her to orally copulate them.

Stephanie identified appellant as one of her assailants and specifically recalled that he, as did three others, removed his pants and placed his penis in her vagina against her will. Appellant did not place his penis in her mouth. The witness also testified that the boys took her radio and $2.

Connie Sandoval, whose house bordered the vacant house where the foregoing incident occurred, testified that at approximately 11:30 a.m. on February 19, 1983, she was on the way to her house when she observed Stephanie being forced towards an alley by four boys. Although Stephanie was walking, it was obvious to witness Sandoval that Stephanie was being forced to walk with the boys due to Stephanie's facial expressions, her body movements, and the way the boys were "escorting" her. Appellant was identified as one of the four boys.

Ms. Sandoval eventually entered her house and, shortly thereafter, was alerted to some commotion in the vacant house by her dog's barking. From her back window, the witness saw one of the boys get his face slapped by Stephanie as he tried to kiss her. Ms. Sandoval returned to her business in the house but again heard her dog barking. Also, she heard Stephanie "hollering" for help. In response, Ms. Sandoval yelled, "I am going to call the police if you don't leave that girl alone —." Thereafter, she noticed about five or six boys, including appellant, jumping a block wall around the vacant house.

Mary Ellen Harvey testified that from her kitchen window she saw "[t]hree boys back, back of one boy going over the block wall to the rear, [and] one [boy] under the house." Mrs. Harvey spoke with one of the boys asking him what he was doing with the girl. After he denied that there was a girl in the house, Mrs. Harvey left her house to investigate. Mrs. Harvey found Stephanie naked from the waist down.

City of Los Angeles Police Officer Rod Keller arrived at the scene in his patrol car having received a radio call that there was a woman screaming for help at that location. He exited his car and heard the sound of a woman

crying, coming from the vacant house. The officer found Stephanie lying on the floor in the house. She was covered with dust and her clothes were undone. Also, she was trembling and crying hysterically and it took several minutes for the officer to calm her down.

Stephanie was taken out of the building and into the police car. She informed the officer that she had been attacked, dragged to the house, and raped. She complained about pain in her head and abdomen. Thereafter, Stephanie was taken to a location where appellant was detained. As they drove up, she identified appellant as one of her attackers.

On February 23, Stephanie was examined by Dr. Louis Acosta. The doctor, whose specialty is emergency medicine, inclusive of emergency rape treatment, observed abrasions in Stephanie's mouth and her vagina. The doctor also found bruises on Stephanie's thighs and on her wrist. A vaginal swab did not reveal the presence of spermatozoa. The doctor concluded that the fresh abrasions in the vaginal area were consistent with rape indicating either the use of force or lack of lubrication.

Lucinette Espree, a student at Manual Arts High School, testified that on May 12, 1984, she heard appellant announce to her cousin that he, appellant, was the Manual Arts rapist. "He said it to Calvin, 'James G.[. . .], the Manual Arts rapist."

Appellant presented an alibi defense.

DISCUSSION

I

■    Appellant's primary contention is that the juvenile court was without jurisdiction to adjudicate the truth of the February 24, 1983, petition because of its prior determination that appellant was unfit as a proper subject to be dealt with under the juvenile court system. We disagree.

The juvenile court has exclusive jurisdiction over all minors under age 16 in cases arising under section 602. This is so because although section 602[3] speaks in terms of those persons under 18 who commit crimes as being

---

[3]Welfare and Institutions Code section 602 provides as follows: "Any *person who is under the age of 18 years* when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Italics added.)

"within the jurisdiction of the juvenile court," section 707[4] authorizes the juvenile court to make a finding that a minor is "not a fit and proper subject to be dealt with under juvenile court law; only with respect to those 16 years of age or over."

In short, a minor 16 years of age or over *may* or may not be retained and treated as a juvenile offender, while a person under 16 years of age *must* be retained and treated as a juvenile offender.

Appellant argues that the result in this case is controlled by *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463]. Three petitions were filed against Dennis, alleging various criminal offenses. All were sustained and Dennis was declared to be a ward of the juvenile court. Prior to the making of any dispositional orders in regard to these sustained petitions, yet another petition was filed pursuant to section 602 alleging that Dennis committed the crimes of rape, burglary and robbery. Dennis was age 17 at the time he committed all of the various offenses. A fitness hearing was held pursuant to section 707 and Dennis was found to be unfit for handling by the juvenile court. The district attorney then filed an information charging Dennis with the crimes of rape, robbery and burglary. Dennis pled guilty in the superior court to second degree robbery and the other charges were dismissed. Proceedings were suspended and he was placed on three years probation on condition that he serve one year in the county jail. Thereafter, the juvenile court disposed of the previously sustained petitions by committing Dennis to the Youth Authority. That order was the subject of appeal.

---

[4]Welfare and Institutions Code section 707 provides in pertinent part as follows: "(a) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was *16 years of age or older,* of any criminal statute or ordinance except those listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria: [Five criteria are enumerated.] (Italics added.)

"(b) The provisions of subdivision (c) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was *16 years of age or older,* of one of the following offenses: [Twenty criteria are enumerated.] (Italics added.)

"(c) With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was *16 years of age or older,* of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. . . ." (Italics added.)

In reversing, the court in *In re Dennis J.*, *supra*, 72 Cal.App.3d at page 762 stated: "When a juvenile court determines that a minor is not a fit subject for handling under the juvenile court law, it should not attempt to exercise or retain jurisdiction over the juvenile on matters then pending in the juvenile court, especially where the pending matters were part of the basis upon which the determination of unfitness was made." At pages 759-760, the appellate court also noted: "The juvenile court in specifying the reasons underlying its decision [to find Dennis unfit] relied heavily on Dennis' prior delinquent behavior and the escalation in the seriousness of the offenses committed stating: 'The minor's prior delinquent history shows continued violations of the law . . . and continued anti-social conduct in the face of pending petitions . . . previous attempts of the Juvenile Court to rehabilitate the minor . . . have been unsuccessful. . . . On the circumstances and the gravity of the offense . . . the minor's past delinquent history . . . the court having considered . . . the advisability of having the minor go into the Juvenile Court system . . . makes the finding that the minor is not a fit subject to be dealt with within the Juvenile Court.'"

*In re Dennis J.* is distinguishable on two significant points and is not controlling in this case. First, Dennis was 17 years of age at the time he committed all the enumerated offenses. Here, appellant committed crimes at age 15 and age 16. Second, in determining that Dennis was not a fit and proper subject to be dealt with under the Juvenile Court Law, the appellate court found that the trial court had considered pending matters as part of the basis upon which the determination of unfitness was made. In the case at bench, the juvenile court acknowledged the existence of the earlier February 24, 1983 petition, but did not consider same.[5]

---

[5]The court made the following statements at the fitness hearing:

"THE COURT: This matter is here under a fitness hearing under 707(b) based on a petition alleging a kidnapping with the use of a gun, also possession of a gun.

"I've read the report and I've read the file. In reading the report it would appear that the minor would not be fit. *On the other hand, we have a February 24 petition involving several counts of rape.*

"That petition, that charge must be tried in this court as a matter of law because James was under 16 at the time the offense was committed. It makes no sense, seems to me, knowing that the February 24 petition must stay here, to find the minor unfit on the May 16 petition, and, in substance, split jurisdiction.

". . . . . . . . . . . . . . . . .

"THE COURT: All right. I would be inclined to be convinced by Ms. Asayama's department that I should be focusing only on the statutory crime criteria. And it's clear that under all circumstances and gravity of the offense, the minor's previous delinquent history, previous attempts to rehabilitate the minor, [and] degree of criminal sophistication, that the minor would be unfit.

"I would also agree with Ms. Asayama that since [the minor] is 16 now[,] and a juvenile court [would have] jurisdiction [for] at least . . . nine years, that [the minor] would most likely be fit on that last criteria. But that would be the only one.

"Accordingly, I find the minor is not a fit and proper subject to be dealt with under juvenile court law [on] this matter; that is, I'm referring to the May 16th petition. The

Not unlike *In re Dennis J., supra, People* v. *Superior Court (Woodfin)* (1982) 129 Cal.App.3d 970 [182 Cal.Rptr. 787], and *In re Shanea J.* (1984) 150 Cal.App.3d 831 [198 Cal.Rptr. 228], are also distinguishable from our case. In both cases the minors involved were 16 years of age at the time of the alleged commission of the crimes.

We are mindful of the concerns expressed in *In re Dennis J.* that "Juvenile court proceedings are designed for the rehabilitation of minors and not punishment [citations], and it is inconsistent with that concept to have other departments of the court acting on cases of minors within the jurisdiction of the juvenile court. [Citations.] When the juvenile court determines that wardship is no longer necessary it should terminate its jurisdiction. [Citation.]" (*Id.,* at p. 762.) We opine, however, that those supervisorial agencies that govern the postconviction conduct of young criminal defendants will find an administrative accommodation to the split jurisdictional concerns and conflicts expressed in *In re Dennis J.* However, the core point is that juvenile courts, in any event, retain exclusive jurisdiction over a minor under the age of 16 at the time of the commission of the crime, notwithstanding a subsequent determination that the minor is not a fit and proper subject to be dealt with under juvenile law.[6]

## II

Appellant's remaining assertion is that the evidence does not support the findings of the juvenile court. We disagree.

In particular, appellant targets the evidence supplied by the prosecutrix, Stephanie. He argues that as a "mentally-retarded minor," her testimony could ". . . in no way be considered reasonable, credible, or of solid value, particularly where directed toward a finding that this particular minor (allegedly one of several boys involved) perpetrated all of the acts for which he was held accountable herein."

■ On appeal, the appellate court must view the evidence in the light most favorable to the respondent. In so doing, it must resolve all conflicts in the evidence in favor of the respondent and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

---

substance of the May 16th petition will be referred to the District Attorney for filing under the general law." (Italics added.)

[6]The alternative, as appellant disingenuously suggests, is to dismiss the earlier petition.

■ "While an appellate court must determine whether substantial evidence on the record supports each essential element of an offense [citation], we are mindful that '. . . "[I]t is the *exclusive* province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]"'" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], citation omitted.)" (*People* v. *Cicero* (1984) 157 Cal.App.3d 465, 471-472 [204 Cal.Rptr. 582]; italics added.)

■ Consequently, appellant's argument fails on two grounds. First, it is beyond the scope of our function to consider the credibility of a witness or reweigh the evidence.[7] (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 473.) Second, it appears that Stephanie's testimony is corroborated by other testimony adduced at trial.

By way of example, appellant's admission to his cousin that he was the "Manual Arts rapist" strongly supports Stephanie's testimony. Equally supportive of Stephanie's testimony is Ms. Sandoval's identification of appellant as traveling with the boys, leading their "victim" into an alley, and as one of the boys who ran from the vacant house.

Substantial evidence supports the findings of the trial court.

The adjudication of wardship is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 2, 1985. Kaus, J., did not participate therein.

---

[7]Appellant challenges only Stephanie's credibility, *not* her competency to testify.

There was defense testimony that Stephanie was mentally retarded and was of doubtful capability to identify appellant. The trier of fact considered this evidence but believed the People's case.