## COMMONWEALTH *vs.* HENRY PETERS.

A ship, lying at anchor between Boston and Chelsea, off Constitution Wharf, at the distance of one fourth or one third of a mile from said wharf, in water of the depth of four or five fathoms at low tide, and between one third and one half of a mile's distance from the navy yard in Charlestown, is within the body of the county of Suffolk; and an offence committed on board a merchant ship, so situate, owned by a citizen or citizens of the United States, is exclusively cognizable by the courts of the State.

An acquittal by a jury, in a court of the United States, of a defendant who is there indicted for an offence of which that court has no jurisdiction, is no bar to an indictment against him, for the same offence, in a state court.

THE indictment against the defendant alleged that he, on the 22d of June 1846, at Boston, " with force and arms, in and upon one Millage Stiles, then and there being the

second mate or officer of a certain ship or vessel, called the ship Sabbattis, then lying and being at anchor in the harbor of said Boston, and within the body of the county of Suffolk, an assault did make with a dangerous weapon, called a knife, he the said Peters then being cook of said vessel, and him the said Stiles said Peters then and there did beat, bruise, wound and evil treat, and cut and stab with said knife," &c.

In the municipal court, to which the indictment was returned, the defendant pleaded in bar, " that at a district court of the United States, begun and held at Boston," &c. " on the twenty third day of June A. D. 1846, he the said Peters was arraigned upon, and pleaded not guilty to, an indictment found against him, and returned in to said district court," &c. " which said indictment charged the said Peters with committing an assault, with force and arms, and with intent to kill, upon one Millage Stiles, on board a certain vessel or ship, belonging, in whole or in part, to a citizen or citizens of the United States, called the ship Sabbattis, on the twenty second day of June 1846, within the admiralty and maritime jurisdiction of the United States, and within the admiralty and maritime jurisdiction of the said district court of the United States, within a haven called the port of Boston and Charlestown ; and which said indictment further charged, that the said Peters, at the time and place aforesaid, did, with force and arms, and with a dangerous weapon commonly called a sheath knife, commit an assault upon the said Millage Stiles, against the peace," &c. " which said supposed offences are more fully set forth in the indictment aforesaid ; and as will more fully appear by the records of said court, in said court remaining, a copy whereof he here produces ; upon which said plea of not guilty to said indictment, the said Peters put himself upon the country for trial ; whereupon a jury in said court was empannelled and sworn," &c. " who, after hearing," &c. " returned their verdict, that the said Henry Peters was not guilty ; whereupon it was considered by said court, that said Peters be discharged, and go without day." The plea then averred the identity of the parties, and of the offences,

mentioned in both indictments, and also averred that said ship Sabbattis, at the time aforesaid, was owned as alleged in the former indictment, and was duly registered, and was engaged in lawful trade and commerce, and was on a voyage from Liverpool to Boston, and was in an arm of the sea, within the admiralty and maritime jurisdiction of the United States, (stating the position of the ship Sabbattis at that time.)

The attorney for the Commonwealth prayed and had oyer of the record aforesaid, and thereupon demurred to the said plea. The court sustained the demurrer, and ordered the defendant to answer further. The defendant thereupon pleaded not guilty.

At the trial before *Cushing*, J. there was full and uncontradicted evidence of the committing of the alleged assault by the defendant upon said Stiles, and the cutting and stabbing of him with a knife. But it also clearly appeared that the offence was committed on board the said ship Sabbattis, while lying off Constitution Wharf, in Boston, at anchor in the harbor, at the distance of from one fourth to one third of a mile from said wharf, between Boston and Chelsea, in water of the depth of from four to five fathoms at low tide, and at the distance of from one third to one half of a mile from the navy yard in Charlestown ; that said ship sailed under the American flag, was engaged in foreign commerce, was registered to be of the burden of four hundred and forty seven tons, had arrived directly from Liverpool, (England,) to the place aforesaid, and was about ready to haul in to one of the wharves in Boston, when the offence was committed.

The defendant contended, and requested the judge to instruct the jury, that the county of Suffolk embraced only the city of Boston, the town of Chelsea, and several of the islands in Boston harbor ; that the boundaries of the city of Boston and of Chelsea extended, on the water, only to low water mark ; and that Charles River did not extend down so low as to said ship so lying and being, as aforesaid, at the time above mentioned ; and that said offence, as above

described, was a case of admiralty and maritime jurisdiction, cognizable exclusively in the courts of the United States; and that the United States have the sole and exclusive power and authority to define and punish all offences committed on board vessels owned, in part or in whole, by a citizen or citizens of the United States, by seamen employed in navigating such vessels engaged in commerce with foreign nations, or among the States, while such vessels are on their voyages from foreign nations or from other States, and within the admiralty and maritime jurisdiction of the United States; and that said ship Sabbattis, at the time of said offence, was within that jurisdiction of the United States.

But the judge instructed the jury, that if they were satisfied that the ship Sabbattis, at the time of the committing of the assault by the defendant, was lying in any part of the waters of the harbor of Boston, embraced within the town of Chelsea on the north, the town of Charlestown on the west, and the city of Boston on the south and east, the said offence was committed within the body of the county of Suffolk, and was properly cognizable by the said municipal court, although the said ship might have been then lying in deep water, and below low water mark.

The jury returned a verdict of guilty; and the defendant alleged exceptions to the aforesaid proceedings, directions and instructions.

*Tasker*, for the defendant.

*S. D. Parker*, for the Commonwealth.

SHAW, C. J.    The defendant was indicted, in the municipal court, for an aggravated assault and battery, committed on board of an American merchant vessel, lying at anchor in the harbor of Boston, having then recently returned from a foreign voyage, and anchored in the channel, preparatory to hauling in, to unlade at a wharf.    The place is sufficiently described, for the purpose of this inquiry, by saying that the vessel was lying within and far up the inner harbor, but anchored in the channel, in deep water, at a place never left by the tide, and of course below low water mark.    The question

·is, whether the municipal court had jurisdiction of an offence so committed. That court had jurisdiction of all crimes and offences, arising and occurring within the county, cognizable by the courts of the State; and therefore they had jurisdiction of this case, unless it was exclusively cognizable by the courts of the United States; and this is the question raised, in the first instance, by the defendant's declinatory plea to the jurisdiction, and afterwards by the bill of exceptions.

The argument on the part of the defendant is, that by the constitution of the United States, Art. 3, § 2, the judicial power of the United States "shall extend to all cases of admiralty and maritime jurisdiction;" and that a place situated below low water mark is within admiralty jurisdiction. If this were a new question, it would be entitled to a much more extended investigation than we can now think necessary, since it seems to be settled by authorities entitled to the highest respect.

Supposing the case stood upon the constitution of the United States alone, without any legislation under it by congress; the natural conclusion, to which we should be led, would be, that the purpose of the constitution was, to transfer to the government of the United States all the admiralty and maritime jurisdiction over cases, civil and criminal, which had been used and exercised in England by the courts of admiralty and the special commissioners for the trial of maritime causes; and that all other judicial power would remain to the State, under the express provision of the tenth amendment of the constitution. This would leave to the courts of the State all the jurisdiction of all cases occurring upon rivers and other places within the ebb and flow of the tide, lying within the body of any county.

We think it well settled, that prior to the adoption of the constitution of the United States, the admiralty and maritime jurisdiction of the courts of Great Britain, so far as it was exclusive, was confined to the high seas; but within all bays, creeks, coves, basins and harbors lying within the body of any county the admiralty and the courts of common law had

concurrent jurisdiction. 2 Hale P. C. 16, 17. *Rex* v. *Bruce*, Russ. & Ry. 243, and 2 Leach, (4th ed.) 1093. 3 Wheat. 371, *note.* This point is stated with approbation by Mr. Chief Justice Marshall, in *United States* v. *Bevans*, 3 Wheat. 387; but it is not directly adjudicated, because it was not necessary to the decision of that case. If the courts of the United States and of the Commonwealth had concurrent jurisdiction, it is sufficient to decide the main point raised on this bill of exceptions, to wit, that the municipal court had jurisdiction; but it brings up another, arising on the whole record, which is, whether the defendant's plea of a former acquittal in the district court of the United States should not have been sustained. Suppose the municipal court had jurisdiction, yet if the defendant had already been tried and acquitted, in a court having concurrent jurisdiction, it must be deemed a trial and acquittal on the merits; and on the well known principle of *res judicata*, he could not be again tried. In order, then, to sustain this conviction, it must appear that the United States courts had not jurisdiction; because an acquittal, by a court having no jurisdiction, is in legal consideration no trial, and cannot be a bar to an indictment in a court of competent jurisdiction.

It has already been stated that the place where the offence is alleged to have been committed was quite within the inner harbor of Boston, entirely land-locked, but in deep water, below the line of low water mark. All creeks, havens, coves, and inlets lying within projecting headlands and islands, and all bays and arms of the sea lying within and between lands not so wide but that persons and objects on the one side can be discerned by the naked eye by persons on the opposite side, are taken to be within the body of the county. The place, where the vessel in question was at anchor, was clearly a place of this description, and is within both definitions; that is, a river, or arm of the sea, below low water mark, and so within admiralty and maritime jurisdiction; and also a place within the body of a county. It becomes necessary, therefore, to consider both questions; *first*, whether the

municipal court had jurisdiction ; and *secondly*, whether that jurisdiction was exclusive of that of the laws and courts of the United States.

It being settled that the place in question was within the territorial limits of this Commonwealth, and within the body of the county of Suffolk, the municipal court has jurisdiction, unless its jurisdiction has been taken away by the constitution of the United States, and the laws passed in pursuance of it. It is true that the constitution of the United States, and the laws duly made under it, are of supreme authority, and are paramount to those of the several States, where they are opposed to each other. But it is only when the laws of the United States, so made, are in terms, or by necessary implication, repugnant to those of the State, · that the authority of the laws of the State are superseded. But it has often been held, that where, by the constitution, a power is vested in the government of the United States over any particular subject or class of subjects, the constitution does not, by its own force, confer a power on the courts of the United States ; but it vests in congress an authority to call such power into action, and to pass laws on such subject ; and such legislation may give an exclusive jurisdiction, in terms, to the courts of the United States ; or its provisions may be of such a nature, that in their operation they must necessarily be exclusive ; in which cases, the authority of the State, both in its legislative and judicial functions, is necessarily superseded.

It may well, therefore, be conceded, that under the provision of the constitution of the United States, which declares that the judicial power "shall extend to all cases of admiralty and *maritime* jurisdiction," congress would have power to make laws for the punishment of all offences committed upon tide waters, below the lowest ebb of the tide, and to give exclusive jurisdiction thereof to the courts of the United States; because, although such places are within the bodies of counties, still, as these places are upon tide waters, below where the sea ebbs, and by means thereof communicating

with the sea, they are, in a natural as well as a legal sense, of a maritime character, and the acts done thereon, and calling for the intervention of either civil or criminal proceedings at law, may well be deemed, both in their own nature, and by ancient legal usage and practice, to be of admiralty and maritime jurisdiction. Still, until congress have exercised such power, and passed such laws, giving exclusive jurisdiction to the courts of the United States, the jurisdiction of the State is not superseded.

In the case of *United States* v. *Coolidge*, 1 Gallis. 488, Mr. Justice Story maintained that an indictment at common law would lie in the courts of the United States for a criminal act against the United States; impugning the authority of the decision in the case of *United States* v. *Hudson*, 7 Cranch, 32. But the case so decided by Judge Story was a case of offences on the high seas, where no State had jurisdiction, and where *the jurisdiction of the United States, if it existed at all, was* exclusive. The court were divided in opinion, but I am not aware that the case was carried before the supreme court of the United States for revision. Divided opinions were given in a somewhat similar case. *United States* v. *Worrall*, 2 Dall. 384.

But the precise case was settled, on great deliberation, by the supreme court of the United States, in the case of *United States* v. *Bevans*, 3 Wheat. 336. The defendant was indicted for murder, alleged to have been committed on board of the United States ship of war Independence, lying in the inner harbor of Boston, at anchor in the channel, below the line at ·which the water ebbs and flows. The place, in this respect, was similar to that on which the question arises in the present case. The court decided that the case was not cognizable by the courts of the United States, on the broad ground that whatever may be the constitutional power of congress, it was clear that that power had not been so exercised, as to confer on its courts jurisdiction over any offence committed in any river, haven, basin or bay, which is within the jurisdiction of any particular State. It was also decided

that the jurisdiction of the State was coëxtensive with its territory, and that the place in question, though below the ebb of the tide, was yet within the territory, and the offence within the jurisdiction of Massachusetts.

That indictment was founded on the act of 1790, *c.* 9, § 8, providing for the punishment of murder, committed "upon the high seas, or in any river, haven, basin or bay *out of the jurisdiction of any particular State.*" These last words the court held to be descriptive and material, and, in such "river," &c. to exclude the operation of the laws and the jurisdiction of the courts of the United States, and, by necessary consequence, leave the jurisdiction of the laws and courts of the Commonwealth in full force. See *United States* v. *Wiltberger,* 5 Wheat. 115, *note.*

A case came again before the circuit court of the United States in this district, in 1829, (*United States* v. *Grush,* 5 Mason, 290,) involving the same question. It was founded on the United States crimes' act, *St.* 1825, *c.* 276, § 22. That act (§ 4) provides for the punishment of murder, using in this respect the same terms as the *St.* of 1790, viz. "upon the high seas, or in any river, haven, creek or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular State." Sect. 22, upon which, it is presumed, the first indictment, in the district court, against this defendant, was found, uses the same language. It must be upon the high seas, or in some arm of the sea, &c. within the admiralty jurisdiction of the United States, and "out of the jurisdiction of any particular State." This reënactment of the law by congress, some years after the construction put on the former act by the supreme court of the United States, is a strong confirmation, on the part of the United States' legislature, that it was not their intention to take away the jurisdiction of the States over creeks, &c. although they were deemed to be arms of the sea, and, as such, within admiralty and maritime jurisdiction.

It may be remarked that the place where the offence was committed, in *United States* v. *Grush,* might, with much

greater propriety, be held to be within the admiralty and mari-
time jurisdiction, because it was in the lower harbor of Boston,
near Lovell's, George's and Gallop's Islands, where the water
is of great depth, somewhat within the light-house and Point
Alderton. Story, J. decided that the place in question was
not on the high seas, but, being within the *fauces terra*,
where a man may reasonably discern between shore and
shore, that it was within the body of the county. Having
concluded that it was an arm of the sea, and so, for many
purposes, within the admiralty and maritime jurisdiction, yet
it was also within the body of the county; and therefore,
by the words of the statute, the law of the United States
did not include it, and the courts of the United States had
no jurisdiction.

The court are therefore of opinion that the offence, with
which the defendant stood charged, was not within the juris-
diction of the courts of the United States, but was within
the jurisdiction of the municipal court.

The United States *St.* 1825, *c.* 276, § 22, provides for the
punishment of assaults with any dangerous weapon, or with
intent to kill, &c. The indictment in this case does not, in
terms, aver an intent to kill; but it does aver an assault with
a dangerous weapon, by which the life of the person assaulted
was put in danger. But the indictment in the district court
did, in terms, charge an assault with a dangerous weapon, and
with intent to kill. This was, no doubt, founded upon the
act of 1825, above cited; and no other act on the subject has
been referred to. If there were any other statute of the
United States on the subject, or were it attempted to be sus-
tained at common law, the result on the question of juris-
diction must be the same, unless there were some more recent
statute, giving, in terms, jurisdiction to the courts of the
United States, in cases of assault, in creeks, &c. and making
such jurisdiction exclusive.

It being clear that the indictment against the defendant, in
the district court of the United States, for the same assault
charged in this indictment, was not within the jurisdiction of

that court, we may presume that the acquittal there was upon that ground, and not upon the merits. But whether it was so in fact, or not, it is equally clear that no legal judgment could have been rendered on a conviction in that court, and therefore that an acquittal there is no bar to this indictment.

*Exceptions overruled.*