915 P.2d 1121 (1996)
81 Wash.App. 640
The STATE of Washington, Appellant/Cross-Respondent,
v.
George Lewis CORRADO, Respondent/Cross-Appellant.
In re the Personal Restraint Petition of George Lewis CORRADO, Petitioner.
Nos. 19792-8-II, 19804-5-II.
Court of Appeals of Washington, Division 2.
May 10, 1996.
*1123 Michael Edward Schwartz (Court-appointed), Harrison Ladenburg & Schwartz, Tacoma, for respondent.
W. Stephen Gregorich, Pierce County Deputy Pros. Atty., Barbara L. Corey-Boulet, Pierce County Deputy Pros. Atty., Tacoma, for appellant.
*1122 MORGAN, Judge.
George Lewis Corrado was tried without a charge. The jury found him not guilty of attempted first degree murder, but guilty of the lesser included offense of attempted second degree murder. The primary issue is whether he can be retried for one or both crimes. We hold he can be retried for attempted second degree murder, but not for attempted first degree murder.
On July 30, 1993, Corrado was jailed for shooting Dorothy Gardner. On August 2, 1993, the State charged him with attempted murder in the first degree. On September 24, 1993, the State moved to dismiss without prejudice, saying it had been unable to locate Gardner. The trial court granted the motion and dismissed without prejudice. Corrado remained in jail on other matters, and Gardner was soon found.
On October 25, 1993, Corrado was brought back to court. Although the State had not filed a new charge, the arraignment judge ordered that trial commence on November 1.
On November 1, at the beginning of trial, the trial judge advised counsel in open court that the court file did not contain a charge. The prosecutor said he would file one, but he never did.
After both parties had presented their evidence, the judge instructed the jury on attempted first degree murder and the lesser included offense of attempted second degree murder. The judge also instructed the jury that it could convict of attempted first degree murder; acquit of attempted first degree murder but convict of attempted second degree murder; or acquit entirely. The jury acquitted of attempted first degree murder, but convicted of attempted second degree murder.
Corrado appealed the conviction for attempted second degree murder. He claimed the State's failure to file a charge "deprived the [trial] court of jurisdiction" and rendered the conviction "void."[1]
In July 1995, in Corrado I,[2] we ruled that because the State had failed to file a charge, the superior court had acted without jurisdiction and its acts were "void." We ordered Corrado's release unless, forthwith, he was properly charged and detained. We were not concerned with the acquittal for attempted first degree murder, because it had not been cross-appealed by the State.
A week after our ruling, the State filed an information charging attempted second degree *1124 murder. Shortly thereafter, it filed an amended information charging attempted first degree murder. Corrado moved to dismiss the amended information, arguing (1) double jeopardy, (2) violation of his constitutional right to speedy trial, and (3) governmental misconduct in violation of CrR 8.3(b). Agreeing with the first argument, but rejecting the other two, the trial court dismissed the action. The State appealed, and Corrado cross-appealed.

I.
The State argues that Corrado was not in jeopardy during the previous trial because we held, in Corrado I, that the trial court "lacked jurisdiction"[3] for purposes of state procedural law. Thus, it says, it is entitled to retry him for attempted first degree murder. Corrado argues that he cannot be retried at all, even for attempted second degree murder. We begin by analyzing and applying the usual elements of double jeopardy. Then, we discuss whether the State's jurisdictional argument alters our analysis.

A.
The double jeopardy clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb".[4] Generally, it bars trial if three elements are met: (a) jeopardy previously attached,[5] (b) jeopardy previously terminated,[6] and (c) the defendant is again in jeopardy "for the same offense."[7] The first two elements determine "former" jeopardy, which is a prerequisite to "double" jeopardy.[8] When "former" jeopardy is assumed or established, the third element determines "double" jeopardy.
Each element furthers a different policy or idea. The attachment element arises from the idea that a defendant is not in jeopardy until he or she is actually at risk of conviction; in other words, jeopardy should "attach" when an accused is at risk, but not otherwise.[9] The termination element arises from the idea that the State should have one complete opportunity to convict; in other words, jeopardy should "terminate" when the State has hadbut not before the State has hadone full and fair opportunity to prosecute.[10] The same offense element arises from the idea that a defendant should not have to run the same "gauntlet" more than once,[11] and, correspondingly, that the State should not have more than one opportunity *1125 to convict a defendant for the same crime.[12]
As a general rule, jeopardy attaches in a jury trial when the jury is sworn, and in a bench trial when the first witness is sworn.[13] This may not be true, however, when the trial court "lacks jurisdiction." We consider this jurisdictional exception more fully below.
As a general rule, jeopardy terminates with a verdict of acquittal.[14] Thus, "a verdict of acquittal ... is a bar to a subsequent prosecution for the same offense,"[15] and an acquitted defendant may not be retried even when "the acquittal was based upon an egregiously erroneous foundation."[16] Insufficient evidence is equivalent to an acquittal,[17] because no rational trier could find all essential elements of the crime charged.[18]
As a general rule, jeopardy terminates with a conviction that becomes unconditionally final,[19] but not with a conviction that the defendant successfully appeals.[20] The United States Supreme Court has "expressly rejected the view that the double jeopardy provision prevent[s] a second trial when a conviction ha[s] been set aside;" instead, it has "effectively formulated a concept of continuing jeopardy that has application where criminal proceedings against an accused have not run their full course."[21] The result is that the double jeopardy clause "`imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside,'"[22] and that a defendant's "successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence ... poses no bar to further *1126 prosecution on the same charge."[23] "[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect,"[24] and "society would pay too high a price `were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.'"[25]
Incidentally, jeopardy may or may not terminate when a trial ends without a verdict.[26] For example, it will terminate when a mistrial is declared without reason,[27] but not generally when a mistrial is due to the defendant[28] or a hung jury.[29]
Once jeopardy has attached and terminated, the "same elements test," also known as the Blockburger test,[30] determines whether a defendant presently faces jeopardy "for the same offense" as before. According to that test, two offenses are not the same if each contains an element not contained in the other.[31]
Applying these principles to this case, we hold that Corrado can be retried at least for attempted second degree murder. In his prior appeal, he succeeded in having his conviction set aside. Thus, his original jeopardy did not terminate; it is "continuing" rather than "former," and in the absence of "former" jeopardy he cannot show "double" jeopardy.[32]
Although Corrado can be retried for attempted second degree murder, it would appear, at first glance, that he cannot be retried for attempted first degree murder. Jeopardy attached when the jury was sworn; jeopardy terminated when the jury acquitted; and the State now seeks to prosecute for the same offense as before. Thus, all three elements of double jeopardy are met, and the double jeopardy clause bars retrial for the higher crime[33]unless the State's jurisdictional argument leads to a different result.

B.
The United States Supreme Court first pronounced a jurisdictional exception in *1127 United States v. Ball.[34] It said:
An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense. Com. v. Peters, 12 Metc. (Mass.) 387; 2 Hawk. P.C. c. 35, § 3; 1 Bish. Cr. Law, § 1028.
The Court made similar statements in at least three turn-of-the-century cases[35] and one more modern case.[36] As far as we are aware, however, the Court has never decided a case in which it actually used "lack of jurisdiction" as its reason for denying double jeopardy protection.
Clearly, the exception does not apply every time a court chooses to intone "lack of jurisdiction" for state procedural law purposes. The phrase "lack of jurisdiction" has many meanings,[37] including but not limited to the following: that a court is not duly constituted;[38] that a court lacks power to hear the type of case then before it;[39] that a court lacks territorial jurisdiction (i.e., power over the place where the crime was committed);[40] that a court lacks power to deal with the type of person then before it;[41] that a court has no charge before it;[42] that a court has a defective charge before it;[43] that a court has failed to honor a timely affidavit of prejudice;[44] that a court has erroneously failed to determine whether an accused is competent to stand trial;[45] that a court has erroneously failed to appoint counsel;[46] that a court has made a finding of probable cause without sufficient evidence;[47] that a court has convened trial in the wrong county;[48] or even that a court has violated one of its own court rules.[49] If double jeopardy protection were obviated in each of these situations, and in *1128 any other in which a court opts to chant "lack of jurisdiction," the double jeopardy clause would be gutted. As the Second Circuit has rightly noted, "`jurisdiction' in a double jeopardy context is a jurisprudential greased pig,"[50] and double jeopardy protection "cannot turn on the vagaries of state procedural definitions."[51]
Three cases illustrate these vagaries. In Boyd v. Meachum,[52] the defendant was charged with burglary and felony murder committed during the burglary. Connecticut law required a probable cause determination on the murder charge, but not on the burglary charge. Before trial, the trial court found probable cause on the murder charge, but its finding was based on insufficient evidence. At trial, the defendant was convicted. After trial, the defendant appealed only the murder conviction to the Connecticut Supreme Court. That court reversed the murder conviction on grounds that "insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant." The State then sought to retry the defendant for felony murder. The defendant claimed double jeopardy, and the matter worked its way to the Second Circuit on a writ of habeas corpus. The defendant's problem, of course, was that he had succeeded in overturning his felony murder conviction during his first appeal; thus, under normal double jeopardy principles his original jeopardy was "continuing" rather than "former." To counter this problem, the defendant concocted a three-step argument: First, he claimed that jeopardy had not attached to the felony murder count at his first trial because, under state law, the trial court had "lacked jurisdiction" on that count. Second, he claimed that jeopardy had attached to the burglary count at his first trial because, under state law, the trial court had had jurisdiction on that count. Third, he claimed that the burglary was a lesser offense included within felony murder (which was true under state law), and that under the same-elements test of Blockburger v. United States he could not be tried for greater and lesser offenses in two successive prosecutions. The Second Circuit rightly rejected this argument, saying that "Connecticut's decision to characterize a lack of probable cause as a lack of `personal jurisdiction' is purely semantic, and has no real or practical consequence."[53] Noting that the trial court had had jurisdiction over the type of offense, over the person, and over the place where the offense allegedly occurred, it essentially concluded that the trial court had had "jurisdiction" of both charges in the first proceeding; that jeopardy had attached to both charges at the beginning of the first trial; that jeopardy had not terminated as to the felony murder charge because the defendant had overturned his conviction on appeal; and that the defendant could be retried for felony murder.
In Block v. State,[54] the defendant was charged with shoplifting. A bench trial was held on March 16, and the judge rendered a verdict of guilty. According to assumptions made later on appeal, Court Rule 770 allowed the defendant to move for a new trial within three days. It did not, however, allow the trial judge to reconsider or change his verdict. The defendant moved for a new trial, but not within the three days allowed by the rule. He also moved for reconsideration, and the trial judge responded by changing the verdict to not guilty. The State then moved to reinstate the original verdict, and the judge responded by ordering a new trial.
On appeal, the defendant argued double jeopardy. The State argued "that because the verdict of acquittal was in violation of Rule 770, the District Court lacked jurisdiction, and the acquittal did not result in a favorable termination of the defendant's jeopardy."[55] The high court of Maryland ruled "that before a person can be said to have been put in jeopardy of life or limb the *1129 court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged."[56] It held, however, "that the `jurisdiction' of the court for purposes of this principle of double jeopardy law means jurisdiction in the most basic sense. It does not mean that an error in the exercise of jurisdiction permits judicial proceedings to be treated as a nullity."[57] The court concluded:
[T]he fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes. The cases make it clear that an improper or defective exercise of jurisdiction does not deprive an acquittal of its finality. Instead, as long as the court rendering a non-guilty verdict has jurisdiction over the offense, the verdict is a bar to further criminal proceedings on the same charge.[58]
In People v. Superior Court (Marks),[59] the defendant was charged with aggravated first degree murder. The superior court was required by law to hold a competency hearing, but it failed to do so. Ultimately, a jury convicted of second degree murder but acquitted of first degree and aggravated first degree murder.
When the defendant appealed the second degree murder conviction, the California Supreme Court reversed and remanded for further proceedings. It said that when a trial is in doubt concerning competency, it "lacks jurisdiction" to conduct further proceedings until after it has found the defendant competent.[60] It also said that the trial court's failure to determine competency "rendered the subsequent trial proceedings void because the court had been divested of jurisdiction to proceed pending express determination of the competency issue."[61] On remand, the State sought to retry the defendant on the original charge of aggravated first degree murder. The defendant claimed double jeopardy due to the jury's acquittal. The State
responded that the trial court's ... error rendered it without jurisdiction ... and that all other proceedings were a nullity. Since jeopardy never attached, the proffered pleas were unavailable.[62]
The California Court of Appeals adopted the State's position, and the matter again found its way to the California Supreme Court. That court ruled, in effect, that jeopardy had attached when the jury was sworn at the first trial; that jeopardy had terminated on the greater charges as to which the jury had acquitted, but not on the lesser charge as to which the jury had convicted; and that the defendant could be retried only for the lesser charge of second degree murder. It also altered the nomenclature it had used in the earlier appeal, saying:
[T]he trial court does not lose subject matter jurisdiction when it fails to hold a competency hearing, but rather acts in excess of jurisdiction by depriving the defendant of a fair trial. Although the judgment may be a nullity, for double jeopardy purposes the proceedings are not. [Citation omitted.][63]
Having established that the jurisdictional exception does not apply every time a court intones "lack of jurisdiction," we must determine when it applies and when it does not. At the root of the exception is the following hypothesis: Lack of jurisdiction for purposes of state procedural law equals lack of jeopardy for purposes of double jeopardy law. The underlying assumptions are (1) that a defendant is not at risk when tried by a court that "lacks jurisdiction," and (2) that a defendant not at risk is a defendant not in *1130 jeopardy. Thus, it is our view that the test for whether the exception applies is whether a trial court's "lack of jurisdiction" causes the defendant not to be at risk of conviction and punishment.[64]
We derive this lack-of-risk test not only from the assumptions underlying the exception, but also from the seminal case of Ball v. United States.[65] There, one of the defendants had been acquitted after trial on a defective indictment for murder. The question was whether he could be retried. The United States Supreme Court's opinion is not entirely clear, but the Court's main approach seems to have involved three essential steps. First, the Court rejected any presumption that the trial court would have recognized the defect in the charge in time to avoid entering a judgment of conviction; although "ingenuity has suggested that [the defendant] never was in jeopardy, because it is to be presumed that the court will discover the defect in time to prevent judgment,"[66] this suggestion "is bottomed upon an assumed infallibility of the courts, which is not admitted in any other case."[67] Second, the Court noted that the defendant had actually been at risk, even though the indictment had been defective. "If a conviction take place, whether an indictment be good or otherwise, it is ten to one that judgment passes;"[68] and "[i]f the judgment is upon a verdict of guilty, and unreversed, it stands good, and warrants the punishment of the defendant accordingly."[69] Indeed, as the Court noted, "Many hundreds, perhaps, are now in the state prison on erroneous indictments, who, however, have been fairly tried on the merits."[70] Finally, in light of the fact that the defendant had actually been at risk of conviction and commitment to prison, the Court concluded he could not be retried.
Illinois v. Somerville[71] tends to confirm this reading of Ball, though not expressly. There, the trial court discovered, mid-trial, that the charge failed to state an essential element of the crime. Because this caused a "lack of jurisdiction" under Illinois state law, the trial court declared a mistrial. When the State sought to retry the defendant, he asserted double jeopardy. On appeal, the United States Supreme Court focused on whether the mistrial was justified by "manifest necessity."[72] Necessarily, then, it seems to have held or assumed that jeopardy had attached when the jury was sworn. The reason, in light of Ball, would appear to be that the defendant was actually at risk of conviction and commitment to prison, notwithstanding the defective nature of the charge and the trial court's resultant "lack of jurisdiction" for state law purposes.
Benton v. Maryland[73] may also tend to confirm our reading of Ball. There, the Court said that jeopardy attached during trial on a defective charge, regardless of whether the charge was "void" or "voidable" under state law.[74] Thus, the Court seems to have been concerned less with the trial court's "lack of jurisdiction" than with the defendant's risk (i.e., with whether the defendant had run the entire "gauntlet" from indictment to acquittal).
In light of this analysis, the question here is this: When a trial court "lacks jurisdiction" due to the complete absence of a charging document, is the defendant at risk of conviction and punishment? If so, the trial court's "lack of jurisdiction" for purposes of state procedural law does not equate with a lack of jeopardy for purposes of double jeopardy *1131 law, and the jurisdictional exception should not be applied.
In answering this question, we must assume that a trial court judgment is entered and becomes final immediately after trial. We may not assume that the trial court would have discovered the defect in its proceedings in time to forestall judgment; that either party would have appealed after judgment; or that the defect in the trial court's proceedings would have been discovered on appeal. As the Ball Court noted, "the infallibility of the courts" is not to be assumed or admitted when dealing with double jeopardy,[75] as some defendants are likely to be convicted and imprisoned despite defects in the trial court's proceedings.
In answering the question at hand, at least two factors are key. The first, exemplified by State v. Haye,[76] is whether the trial court's lack of jurisdiction will appear on the face of its judgment, or otherwise be apparent to those asked to enforce the judgment.[77] If so, the judgment is unlikely to be honored, and the defendant is not substantially at risk. The second, exemplified by Parsons v. State,[78] is whether the state raised the trial court's "lack of jurisdiction" and objected to the entry of judgment.[79] If so, the State is unlikely to enforce the judgment, and again the defendant is not substantially at risk.[80] Certainly, other factors may be important under particular circumstances; but at least for purposes of this case, we think that a defendant is generally at risk when (a) the State is seeking, rather than objecting to, the entry of a judgment of conviction, and (b) the trial court's lack of jurisdiction will not be apparent from the face of its judgment. Under those circumstances, at least generally, a judgment of conviction will be enforced if not appealed, and the defendant faces jeopardy in reality, whether or not the trial court "lacks jurisdiction" for purposes of state procedural law.
In this case, the State never objected to the trial court's lack of jurisdiction; on the contrary, it actively sought to obtain and enforce a judgment of conviction. Nor did the judgment show on its face the trial court's lack of jurisdiction; the superior court had power to hear and determine felonies, and its judgment gave no indication that *1132 its power had not properly been invoked. As explained in Ball, Corrado would have served out the judgment had he not appealed, and in fact he was imprisoned on the judgment from the time it was entered to the time his first appeal succeeded. Under these circumstances, we think Corrado was at risk of conviction and punishment during his previous trial, despite the trial court's "lack of jurisdiction" for purposes of state procedural law. Thus, we also think Corrado was in jeopardy for purposes of double jeopardy law, and that the jurisdictional exception to attachment does not apply.
Before closing this part of our opinion, we make several additional observations. First, this case was fully tried, up to and including verdicts on the merits. Thus, the State had a full and complete opportunity to prosecute for attempted first degree murder, even though it hampered that opportunity by not filing a charge. And, correspondingly, Corrado "ran the gauntlet" one complete time.
Second, the result we reach is supported by a line of reasoning used by the Ball Court, but not yet mentioned by us. The Ball Court said:
This case, in short, presents the novel and unheard-of spectacle of a public officer, whose business it was to frame a correct bill, openly alleging his own inaccuracy or neglect, as a reason for a second trial, when it is not pretended that the merits were not fairly in issue on the first. That a party shall be deprived of the benefit of an acquittal by a jury, on a suggestion of this kind, coming, too, from the officer who drew the indictment, seems not to comport with that universal and humane principle of criminal law, `that no man shall be brought into danger more than once for the same offense.' It is very like permitting a party to take advantage of his own wrong.[81]
Although the case at bar involves the failure to file a charge, as opposed to a defectively drafted charge, the same considerations apply here.
Third, the result we reach is consistent with cases like State v. Vangerpen,[82]City of Auburn v. Brooke,[83]State v. Markle,[84] and State v. Irizarry.[85] In each of those cases, the defendant had been convicted, albeit on an improper charge.[86] He or she then appealed and had the conviction overturned. Thus, retrial was permissible "for any convicted offense, or of a lesser included crime of the convicted offense."[87] By implication, however, retrial would not have been permissible if, as here, the defendant had been acquitted. In a situation involving a conviction later set aside on appeal, jeopardy does not terminate, but in a situation involving acquittal, jeopardy both attaches and terminates.
Fourth, the result we reach is consistent with the result in State v. Cockrell,[88] but not with the language found therein. In Cockrell, a case not cited by either party, the trial court erroneously refused to honor the defendant's timely pre-trial affidavit of prejudice. After conviction, the defendant appealed and the Supreme Court reversed, ruling the affidavit should have been honored. Then, in a discussion taking less than one page, the court opined that retrial would not constitute double jeopardy "[b]ecause appellants here were never tried by a court of competent jurisdiction."[89] As a result, the court implied that jeopardy had never attached, and that the defendant could have been retried *1133 even if acquitted on the merits. After comparing this implication to the language in cases such as Markle, and to the basic law of double jeopardy, we think the implication was inadvertent, and that the real reasons for the result in Cockrell were (1) that the defendant had upset his conviction on appeal and (2) that jeopardy thus had not terminated.[90]
Fifth, we are unpersuaded by Hamilton v. State,[91] the only case cited by either party in which an acquittal did not bar retrial for the same offense. In Hamilton, the defendant was charged with aggravated assault in Count I and battery in Count II. The trial court erroneously denied him his right to counsel at a preliminary hearing. Under New Mexico's procedural nomenclature, the trial court thereafter "lacked jurisdiction to conduct the preliminary hearing."[92] After a jury acquitted on Count I but convicted on Count II, the defendant appealed only the conviction on Count II, which he succeeded in overturning. The State then sought retrial on both counts, and the defendant claimed double jeopardy as to Count I. Rejecting this claim, the New Mexico Court of Appeals asserted that the trial court had lacked jurisdiction, and that "jurisdiction is essential before jeopardy attaches."[93]
We think Hamilton is wrong. Without analysis, it assumes that procedural nomenclature controls the applicability of the double jeopardy clause; in effect, it holds that an acquitted accused may be subjected to retrial whenever a court arbitrarily affixes the label "jurisdictional" to mere trial error. It is contrary to Marks, Boyd, Block, and, more importantly, to cases like Fong Foo v. United States,[94] in which the United States Supreme Court said that an acquittal is final even when "based upon an egregiously erroneous foundation."[95] Finally, it is illogical, for it uses the improper denial of one right, the right to counsel, as a basis for denying a second right, the right against double jeopardy.
Concluding this part of our discussion, we hold that jeopardy attached and terminated with respect to attempted first degree murder, and that the defendant cannot be retried for that offense. We also hold, however, that jeopardy has not terminated with respect to attempted second degree murder, and that the defendant can be retried for that offense.

II.
By cross-appeal, Corrado argues his constitutional right to speedy trial has been violated because he was imprisoned without trial for more than two years. The essence of his argument is that he was not tried in November 1993, because the trial court lacked jurisdiction at that time. In our view, however, the 1993 trial was just as effective for purposes of the constitutional right to speedy trial, as it was for purposes of the right against double jeopardy. We hold that Corrado was tried within 100 days of the offense, and that his constitutional right to speedy trial was not violated.

III.
Also by cross appeal, Corrado argues the case must be dismissed due to governmental misconduct. He relies on CrR 8.3(b), which provides:
The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.
Here, the only evidence of "misconduct" is the State's omission to file a charge. Obviously, the omission was not intentional; *1134 rather, it was a single instance of negligence. The trial court believed it was not the type of prejudicial mismanagement that necessitates dismissal, and we review the trial court's decision only for abuse of discretion.[96] We see no abuse here, and Corrado's argument fails.
The parties' remaining arguments lack merit or need not be discussed.
The order of dismissal is affirmed as to the charge of attempted first degree murder. The order of dismissal is reversed as to the charge of attempted second degree murder. The case is remanded for further proceedings consistent with this opinion.
HOUGHTON, Acting C.J., and FLEISHER, J. Pro Tem., concur.
NOTES
[1] Br. of Appellant at 14.
[2] State v. Corrado, 78 Wash.App. 612, 898 P.2d 860 (1995).
[3] Br. of Appellant at 2.
[4] U.S. Const. amend. V. The double jeopardy clause applies to the states through the due process clause of the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), and is coextensive with Article I, § 9 of the Washington Constitution. State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267 (1995).
[5] Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); State v. Higley, 78 Wash.App. 172, 902 P.2d 659, review denied, 128 Wash.2d 1003, 907 P.2d 296 (1995).
[6] Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); Higley, 78 Wash.App. 172, 902 P.2d 659.
[7] United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).
[8] See Serfass, 420 U.S. at 393, 95 S.Ct. at 1065 ("an accused must suffer jeopardy before he can suffer double jeopardy"); People v. Superior Court (Marks), 1 Cal.4th 56, 2 Cal.Rptr.2d 389, 820 P.2d 613 (1991)(same).
[9] Serfass, 420 U.S. at 391, 95 S.Ct. at 1064; Price v. Georgia, 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970); Kepner v. United States, 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904).
[10] Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); United States v. Scott, 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978).
[11] Green v. United States, 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); Smalis v. Pennsylvania, 476 U.S. 140, 144 n. 4, 106 S.Ct. 1745, 1748 n. 4, 90 L.Ed.2d 116 (1986). "At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression." United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977).
[12] Arizona v. Washington, 434 U.S. at 505, 98 S.Ct. at 829.
[13] Crist v. Bretz, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); Martin Linen Supply Co., 430 U.S. at 569, 97 S.Ct. at 1353; Serfass, 420 U.S. at 388, 95 S.Ct. at 1062; Illinois v. Somerville, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973).
[14] Smalis, 476 U.S. at 145, 106 S.Ct. at 1749; Richardson, 468 U.S. at 325, 104 S.Ct. at 3086; Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984); Sanabria v. United States, 437 U.S. 54, 64, 69, 78, 98 S.Ct. 2170, 2178, 2181, 2186, 57 L.Ed.2d 43 (1978); Martin Linen Supply Co., 430 U.S. at 571-72, 576, 97 S.Ct. at 1354-55, 1357; Price v. Georgia, 398 U.S. at 329, 90 S.Ct. at 1761 ("this Court has consistently refused to rule that jeopardy for an offense continues after an acquittal"); Green, 355 U.S. at 188, 78 S.Ct. at 223-24 ("a verdict of acquittal is final, ending a defendant's jeopardy"); Kepner, 195 U.S. at 133, 24 S.Ct. at 806; United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896); State v. Ridgley, 70 Wash.2d 555, 424 P.2d 632 (1967).
[15] Ball, 163 U.S. at 671, 16 S.Ct. at 1195; see also United States v. DiFrancesco, 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980); Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978); Serfass, 420 U.S. at 392, 95 S.Ct. at 1064.
[16] Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); see also Sanabria, 437 U.S. at 64, 98 S.Ct. at 2178; DiFrancesco, 449 U.S. at 129, 101 S.Ct. at 433.
[17] Smalis, 476 U.S. at 144, 106 S.Ct. at 1748; Richardson, 468 U.S. at 325, 104 S.Ct. at 3086; Burks, 437 U.S. at 10-11, 98 S.Ct. at 2146-47; Scott, 437 U.S. at 91, 98 S.Ct. at 2193.
[18] Tibbs v. Florida, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982); Jackson v. Virginia, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).
[19] Swisher v. Brady, 438 U.S. 204, 218, 98 S.Ct. 2699, 2707, 57 L.Ed.2d 705 (1978); Brown v. Ohio, 432 U.S. at 165-66, 97 S.Ct. at 2225-26; United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975)("[w]hen a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense").
[20] Justices of Boston Mun. Court, 466 U.S. at 308, 104 S.Ct. at 1813; Tibbs v. Florida, 457 U.S. at 39-40, 102 S.Ct. at 2216-17; Ludwig v. Massachusetts, 427 U.S. 618, 631-32, 96 S.Ct. 2781, 2788-89, 49 L.Ed.2d 732 (1976); United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 1588, 12 L.Ed.2d 448 (1964); Ball, 163 U.S. at 671-72, 16 S.Ct. at 1195-96.
[21] Price v. Georgia, 398 U.S. at 326, 90 S.Ct. at 1759; see also Justices of Boston Mun. Court, 466 U.S. at 308, 104 S.Ct. at 1813; Jeffers v. United States, 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977).
[22] Tibbs v. Florida, 457 U.S. at 40, 102 S.Ct. at 2217 (quoting North Carolina v. Pearce, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969)).
[23] Scott, 437 U.S. at 90-91, 98 S.Ct. at 2193-94; see also Tibbs v. Florida, 457 U.S. 31, 40, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982); DiFrancesco, 449 U.S. at 131, 101 S.Ct. at 434 (same); Ball, 163 U.S. at 671-72, 16 S.Ct. at 1195-96.
[24] Scott, 437 U.S. at 91, 98 S.Ct. at 2194; see also Justices of Boston Mun. Court, 466 U.S. at 310, 104 S.Ct. at 1814; Tibbs v. Florida, 457 U.S. at 40, 102 S.Ct. at 2217.
[25] Tibbs v. Florida, 457 U.S. at 40, 102 S.Ct. at 2217 (citing Tateo, 377 U.S. at 466, 84 S.Ct. at 1589).
[26] Crist v. Bretz, 437 U.S. at 34-35, 98 S.Ct. at 2160-61; Arizona v. Washington, 434 U.S. at 505, 98 S.Ct. at 830; Wade v. Hunter, 336 U.S. 684, 688-90, 69 S.Ct. 834, 836-38, 93 L.Ed. 974 (1949).
[27] Swisher v. Brady, 438 U.S. at 218, 98 S.Ct. at 2707; Wilson, 420 U.S. at 344, 95 S.Ct. at 1022; United States v. Jorn, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971); Green, 355 U.S. at 191, 78 S.Ct. at 225.
[28] Scott, 437 U.S. at 93-94, 98 S.Ct. at 2195-96, Lee v. United States, 432 U.S. 23, 32-33, 97 S.Ct. 2141, 2146-47, 53 L.Ed.2d 80 (1977); Jeffers, 432 U.S. at 152, 97 S.Ct. at 2216; United States v. Dinitz, 424 U.S. 600, 607-08, 96 S.Ct. 1075, 1079-80, 47 L.Ed.2d 267 (1976).
[29] Richardson, 468 U.S. at 324, 104 S.Ct. at 3085; Arizona v. Washington, 434 U.S. at 509, 98 S.Ct. at 832; United States v. Perez, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824).
[30] Rutledge v. United States, ___ U.S. ___, ___, 116 S.Ct. 1241, 1244, 134 L.Ed.2d 419 (1996); Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556; Brown v. Ohio, 432 U.S. at 166, 97 S.Ct. at 2225; Blockburger v. United States, 284 U.S. at 304, 52 S.Ct. at 182.
[31] Rutledge v. United States, ___ U.S. at ___, 116 S.Ct. at 1244; Witte v. United States, ___ U.S. ___, ___, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995); Dixon, 509 U.S. at ___, 113 S.Ct. at 2856; State v. Maxfield, 125 Wash.2d 378, 400-01, 886 P.2d 123 (1994); Higley, 78 Wash.App. at 178, 902 P.2d 659.
[32] See Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300; Green, 355 U.S. 184, 78 S.Ct. 221.
[33] See Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300; Green, 355 U.S. 184, 78 S.Ct. 221.
[34] 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896). Ball was the first case "in which the [United States Supreme] Court considered in any detail the double jeopardy implications of an appellate reversal." Burks, 437 U.S. at 13, 98 S.Ct. at 2148.
[35] Grafton v. United States, 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084 (1907); Diaz v. United States, 223 U.S. 442, 449, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912); Kepner, 195 U.S. at 129, 24 S.Ct. at 804.
[36] Serfass, 420 U.S. at 391, 95 S.Ct. at 1064.
[37] Mead School Dist. No. 354 v. Mead Educ. Ass'n., 85 Wash.2d 278, 282-83, 534 P.2d 561 (1975) (quoting Carter v. United States, 135 F.2d 858, 861 (5th Cir.1943).
[38] State v. Canady, 116 Wash.2d 853, 858, 809 P.2d 203 (1991); In re Eng, 113 Wash.2d 178, 180, 181, 191, 195, 776 P.2d 1336 (1989).
[39] State v. Haye, 72 Wash.2d 461, 464, 433 P.2d 884 (1967); Ridgley, 70 Wash.2d at 557, 424 P.2d 632; United States v. Dunbar, 591 F.2d 1190, 1194 (5th Cir.1979), aff'd in part, 611 F.2d 985 (5th Cir.1980); BLACK'S LAW DICTIONARY 854 (6th ed.1990).
[40] Commonwealth v. Peters, 53 Mass. (1 Met.) 387 (1847).
[41] In re Shanea J., 150 Cal.App.3d 831, 198 Cal.Rptr. 228 (Cal.App.1984).
[42] Corrado, 78 Wash.App. 612, 898 P.2d 860.
[43] People v. Pitts, 223 Cal.App.3d 606, 273 Cal. Rptr. 757 (Cal.App.1990); Rogers v. State, 336 So.2d 1233 (Fla.App.1976), cert. dismissed, 348 So.2d 952 (Fla.1977); State v. Love, 5 Kan. App.2d 768, 625 P.2d 7 (1981); State v. Nicholson, 839 S.W.2d 593, 595 (Mo.App.1992); People v. Hartmann, 123 Misc.2d 553, 473 N.Y.S.2d 935 (1984); see Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300; but see State v. Kjorsvik, 117 Wash.2d 93, 107, 812 P.2d 86 (1991).
[44] Harbor Enterprises, Inc. v. Gudjonsson, 116 Wash.2d 283, 285, 803 P.2d 798 (1991); State v. Cockrell, 102 Wash.2d 561, 567, 689 P.2d 32 (1984).
[45] People v. Superior Court (Marks), 1 Cal.4th 56, 2 Cal.Rptr.2d 389, 820 P.2d 613 (1991).
[46] State v. Hamilton, 107 N.M. 186, 754 P.2d 857 (App.), cert. denied, 107 N.M. 132, 753 P.2d 1320 (1988).
[47] State v. Boyd, 214 Conn. 132, 570 A.2d 1125, 1129 (1990).
[48] Daniel v. Warden, 794 F.2d 880 (3rd Cir. 1986); but see State v. McCorkell, 63 Wash.App. 798, 800, 822 P.2d 795 (citing State v. Hardamon, 29 Wash.2d 182, 188, 186 P.2d 634 (1947) and State v. Escue, 6 Wash.App. 607, 607-09, 495 P.2d 351 (1972)), review denied, 119 Wash.2d 1004, 832 P.2d 487 (1992).
[49] Block v. State, 286 Md. 266, 407 A.2d 320 (1979) (prosecutor's argument). For additional meanings of "jurisdiction," see BLACK'S LAW DICTIONARY 853-54 (6th ed.1990).
[50] Boyd v. Meachum, 77 F.3d 60, 64 (2d Cir. 1996).
[51] Boyd v. Meachum, 77 F.3d at 65 (citing Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir.1991)).
[52] 77 F.3d 60 (2d Cir. 1996).
[53] 77 F.3d at 65.
[54] 286 Md. 266, 407 A.2d 320 (1979).
[55] 407 A.2d at 322.
[56] 407 A.2d at 322 (quoting Grafton, 206 U.S. at 345, 27 S.Ct. at 751).
[57] 407 A.2d at 322.
[58] 407 A.2d at 324.
[59] 1 Cal.4th 56, 2 Cal.Rptr.2d 389, 820 P.2d 613 (1991). Two earlier opinions in the same case can be found at People v. Superior Court (Marks), 268 Cal.Rptr. 283, 788 P.2d 1155 (1990) and People v. Superior Court (Marks), 264 Cal.Rptr. 910 (Cal.App.1989).
[60] 2 Cal.Rptr.2d at 391, 820 P.2d at 615.
[61] 2 Cal.Rptr.2d at 392, 820 P.2d at 616.
[62] 2 Cal.Rptr.2d at 391, 820 P.2d at 615.
[63] 2 Cal.Rptr.2d at 396, 820 P.2d at 620.
[64] For a peculiar case in which a defendant was at risk of conviction but not punishment, see United States v. Sabella, 272 F.2d 206 (2d Cir. 1959). We have no occasion to consider that type of case here.
[65] 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300.
[66] 163 U.S. at 668, 16 S.Ct. at 1194.
[67] 163 U.S. at 668, 16 S.Ct. at 1194.
[68] 163 U.S. at 668, 16 S.Ct. at 1194.
[69] 163 U.S. at 670, 16 S.Ct. at 1195.
[70] 163 U.S. at 668, 16 S.Ct. at 1194.
[71] 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425.
[72] 410 U.S. at 465, 93 S.Ct. at 1071.
[73] 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
[74] 395 U.S. at 796-97, 89 S.Ct. at 2063-64.
[75] 163 U.S. at 668, 16 S.Ct. at 1194.
[76] 72 Wash.2d 461, 433 P.2d 884 (1967).
[77] In Haye, according to assumptions made by the Washington Supreme Court, the district court convicted the defendant for a felony, even though it "lacked jurisdiction" to hear and determine felonies. Because the face of the judgment would have shown both the issuing court and the subject crime, the face of the judgment also would have shown the district court's lack of jurisdiction. Thus, it seems unlikely that prison or jail officials would have accepted the defendant for incarceration, even if the district court had purported to commit him. Possible variations on the same idea include Dunbar, 591 F.2d 1190, in which a trial court lacked power to hear and determine a case that was pending on appeal, and In re Shanea J., 150 Cal.App.3d 831, 198 Cal.Rptr. 228, in which a juvenile court lacked power to hear and determine a case brought against a person who had previously been remanded to adult court.
[78] 110 Nev. 1239, 885 P.2d 1316 (1994).
[79] In Parsons, the State filed a complaint in justice court in which it alleged that the defendant had committed felony driving under the influence of alcohol. The defendant asked to plead guilty to a misdemeanor. "The State objected, arguing that the justice court had no jurisdiction to accept a plea to a felony charge, and could only determine whether or not to bind Parsons over to [the trial court of general jurisdiction]." 885 P.2d at 1318. The justice court overruled the objection, accepted a plea to a misdemeanor, and imposed sentence. The State appealed, and the defendant argued that further proceedings would violate double jeopardy. The Nevada Supreme Court vacated the plea and allowed a new trial. Holding that "the justice court had no jurisdiction," it said that "[a]n acquittal or a conviction by a court having no jurisdiction is void; therefore it is not a bar to subsequent indictment and trial by a court which has jurisdiction over the offense." 885 P.2d at 1321.
[80] A third possible factor, lack of territorial jurisdiction, was held to defeat jeopardy in Commonwealth v. Peters, 53 Mass. (1 Met.) 387 (1847), cited in Ball v. United States. Modernly, however, that factor may be better explained by stating that different sovereigns can prosecute for the same act without creating double jeopardy. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Thus, when different sovereigns are involved, whether jeopardy attaches is immaterial.
[81] 163 U.S. at 667-68, 16 S.Ct. at 1193-94.
[82] 125 Wash.2d 782, 888 P.2d 1177 (1995).
[83] 119 Wash.2d 623, 836 P.2d 212 (1992).
[84] 118 Wash.2d 424, 439-41, 823 P.2d 1101 (1992).
[85] 111 Wash.2d 591, 595-96, 763 P.2d 432 (1988).
[86] In the first two cases, the charge was improper because it failed to state an essential element. In the third and fourth cases, the charge was improper because it was first advanced in the middle of trial.
[87] Markle, 118 Wash.2d at 440, 823 P.2d 1101 (emphasis in original).
[88] 102 Wash.2d 561, 567, 689 P.2d 32 (1984); see also Gudjonsson, 116 Wash.2d at 285, 803 P.2d 798.
[89] 102 Wash.2d at 567, 689 P.2d 32.
[90] Two cases cited by the State confuse attachment with termination in the same way. They are Parks v. State, 41 Md.App. 381, 397 A.2d 212 (1979), aff'd, 287 Md. 11, 410 A.2d 597 (1980), and Palm v. State, 656 S.W.2d 429 (Tex.Crim. App.1981).
[91] 107 N.M. 186, 754 P.2d 857 (App.), cert. denied, 107 N.M. 132, 753 P.2d 1320 (1988).
[92] 754 P.2d at 858.
[93] 754 P.2d at 859.
[94] 369 U.S. at 143, 82 S.Ct. at 672.
[95] Fong Foo, 369 U.S. at 143, 82 S.Ct. at 672; see also DiFrancesco, 449 U.S. at 129, 101 S.Ct. at 433; Sanabria, 437 U.S. at 64, 98 S.Ct. at 2178.
[96] State v. Warner, 125 Wash.2d 876, 882, 889 P.2d 479 (1995); State v. Dailey, 93 Wash.2d 454, 459, 610 P.2d 357 (1980); State v. Martinez, 78 Wash.App. 870, 875, 899 P.2d 1302 (1995), review denied, 128 Wash.2d 1017, 911 P.2d 1342 (1996).